WILLIAM S. HANSCOM, appellant, vs. JAMES E. MARSTON,
executor.

Cumberland.    Opinion January 28, 1890.

*Executor.    Account.    Probate court.*

An executor, in stating and settling his final account, should not charge the
estate with any payments made to heirs or residuary legatees.

The probate court has no power to determine who take the residuum of an
estate under a will, and no power to determine whether an alleged settle-
ment between an executor and residuary legatee is valid.

Executors are holden to good faith and prudence, commensurate with the
nature of their duties, in the control and management of funds belonging to
their estates.

(See *Rogers* v. *Marston*, 80 Maine, 404.)

AGREED STATEMENT.

This was an appeal from the allowance of the defendant's ac
count, as executor of Crispus Graves, by the probate court for
Cumberland county.

Besides the facts stated in the opinion, it appeared. that the
executor, before the settlement of said account, had made the
following exchanges, viz: —

For the $5,000 U. S. bonds, which were then worth a premium
of 6 per cent, he took a note for the same amount, ($5,000,)
bearing 7 per cent. interest, dated June 28, 1879.

He took, at the same time, as security from the indorser of the
note, who was his counsel, a warranty deed of certain improved
real estate in Portland, supposed to be worth about $14,000,
dower not released, and subject to a mortgage given in 1866 to
secure a $5,000 note payable in five years.

For the proceeds of the Blake note ($1,000) he subsequently
took a note for the same sum, bearing interest at 7 per cent, with
the understanding that the aforesaid deed was to be security
therefor.

The deed he left with his counsel for record; but it was not
recorded until April 3, 1882 and said property had been previously
conveyed to innocent purchasers and their deeds duly recorded.

In March, 1880, Marston stated under oath, in his examination before the probate court, in the matter of Fickett's insolvency that Cram told him the deed was recorded, that he, Marston, took it and put it into the Safe Deposit Vault; that this was only a few weeks after the deed was made.

He now states that he must have been mistaken in making the foregoing statements in regard to his taking and depositing the deed.

The maker of the notes was not pecuniarily responsible, nor was the indorser, Mr. Marston's counsel; and the whole investment was lost to the estate.

The executor had no authority from the probate court to make said exchanges and investments.

No reference is made in said account to his disposal of the bonds, etc., or loss of the proceeds thereof.

He was allowed 5 per cent commissions ($600), and the balance ($5,450.33) was represented as cash, or its equivalent.

*J. A. Waterman*, for appellant.

School districts being only *quasi* corporations, their powers are strictly limited and defined by statute. *Jordan* v. *School District* 38 Maine, 165; *Rogers* v. *Marston*, 80 Id. 404. Special enactments have been required to enable towns to receive donations for educational purposes. R. S., c. 3, §§ 51, 53. School districts not exempt from the same conditions, in the use of the donation, as imposed on towns. First, towns must lawfully consent; Second, town must apply the fund or its income according to the testator's will; Third, if the town fails thus to apply the same, the bequest reverts to the donor or his heirs. R. S., c. 3, §§ 51, 53, 54. There must be a direct vote accepting the bequest. *Rogers* v. *Marston, supra.* Not only no such vote, but by a formal, deliberate vote the district has expressly relinquished its claim to it. The district has no further interest in the matter. The balance remains a part of Graves' estate to be distributed to his heirs. *Bugbee* v. *Sargent*, 23 Maine, 271. The residue of the estate was freed from the restriction of the will and became undevised estate and vested in the testator's heirs, by

the release and receipt of April 1885, and payment of $400 by Marston to the district. *Walker* v. *Bradbury*, 15 Maine, 207, 210, 216.

Executor guilty of mal-administration. Conversion of securities: R. S., c. 68, § 11; Perry's Trusts, § 466.

Executors and trustees are bound to exercise proper prudence, that prudence which careful men usually exercise in the management of their own affairs. They are liable for want of due care, and watchfulness and reasonable skill and prudence. *Cumberland County* v. *Pennell*, 69 Maine, pp. 366, 367.

If a trustee confides his duties or trust fund to a stranger, or to his attorney, he will be personally responsible.

If he employs an agent and the agent steals, or appropriates the money intrusted to him, the trustee will be responsible.

Trustees are liable if they place their papers and receipts in the hands of their solicitor so that he can receive their money and misapply it.

They must not invest upon personal or upon unauthorized security. It is not sound discretion to do so.

They must personally see to it that the security is forthcoming upon parting with the money. Allowing solicitors to receive the money upon representation that the mortgage was ready, when there was no mortgage and solicitors misapply the money, trustee held to make up the loss. Perry on Trusts, §§ 402, 441, 444, 453, 454, 463.

Although a personal representative, acting strictly within the line of his duty, and exercising reasonable care and diligence, will not be responsible for the failure or depreciation of the funds in which any part of the estate may be invested, or for the insolvency or misconduct of any person who may have possessed it; yet, if that line of duty is not strictly pursued, and any part of the property be invested by such personal representative in funds, or upon securities not authorized; or be put within the control of persons who ought not to be intrusted with it, and a loss be thereby eventually sustained; such personal representative will be liable to make it good; however unexpected the result, or however little likely to arise from the course adopted, and how-

ever free such conduct may have been from any improper motive. Redfield on Wills, Part II, § 75; *Clough* v. *Bond*, 3 Myl. and Cr. 490, 496 and cases there cited.

*Frank and Larrabee*, for appellee.

If the district had a lawful right to make the settlement with the executor, it would seem to be an end of appellant's claim.

The district was the only party entitled to the funds. Through a failure of the security which the executor took for the funds, they had been lost. The only recourse left to the district, therefore, was a suit against the executor personally or upon his bond.

They had an opportunity to get a sum in cash, without litigation.

The alternative was, therefore, before them whether they should receive this sum in settlement or should resort to legal proceedings.

If they adopted the latter course there was the uncertainty prevailing; and not only that, but the uncertainty of the executor or his sureties being able to respond to any judgment they might obtain. There, too, was the certainty of incurring no little expense which they would be obliged to pay whatever might be the result of litigation.

It was for the district to decide which was the best, most advantageous, most judicious course to adopt. They chose the former, and in accordance with their decision the settlement was consummated.

Whether under the circumstances of the case the executor would be liable to account for the funds was a fairly debatable question.

Executors are holden only to good faith and reasonable prudence in the control and management of funds belonging to their estates.

*Higgins* v. *Whitsey*, 20 Barb. 141; *Thompson* v. *Brown*, 4 Johns. Ch. 619; *Lansing* v. *Lansing*, 45 Barb. 182; *Denton* v. *Sanford*, 39 Hun, 141; *Brown* v. *Campbell*, Hopk. Ch. 233; *Piersay* v. *Thompson*, 1 Edw. Ch. 212; *Crabb* v. *Young*, 92 N. Y. 66; *Scheerin* v. *Public Ad.*, 2 Redf. 426; *Schultz* v. *Pulver*, 11 Wend.

361; *Ruggles* v. *Sherman*, 14 Johns. 446; *James* v. *Cowing*, 17 Hun, 267; *McCable* v. *Fowler*, 84 N. Y. p. 314; *King* v. *Talbott*, 40 N. Y. 86; *Lovell* v. *Minot*, 20 Pick. 116.

In this case funds were loaned on good security.

The advice of an attorney who was supposed to be competent and reliable, having been so adjudged by the court by his admission to practice law, was followed in making the exchanges and investments, and the deed securing the loan was entrusted to this attorney, thus rightfully · believed to be reliable, for record, and he informed the executor it had been recorded.

By R. S., c. 11, § 40, school districts are declared: "Corporations with power to hold and apply real and personal estate for the support of schools therein and to sue and be sued."

Under this provision, it is entirely clear that the district might receive and apply the property bequeathed and devised to it, for the education of the children in the district. It is for this purpose that school districts exist. The district is made in no sense a trustee. It is simply the recipient of money and other property, which under its corporate powers it has a right to hold and expend.

The statute gives the district power "to sue and be sued."

A school district ought not to be obliged to fight a law suit, to the last extremity, if it seems for their interest to adjust it for a less sum than the face of their claim.

Where a city has a judgment, from which an appeal is about to be taken, the council may, if done in good faith, cancel the judgment on payment of costs, and such an agreement, when executed, is binding on the corporation.

*Ford* v. *Clough*, 8 Greenl. 334; *Petersburg* v. *Mappin*, 14 Ill. 193-56, S. C. Am. Dec. 501; *Supervisors* v. *Bowen*, 4 Lansing, 24; Dillon Mun. Corp., § 898 and note.

A school district may compromise its own liabilities also, as a town may, under their power to be sued. *Baileyville* v. *Lowell*, 20 Maine, 178.

The question of power being settled, the matter of judgment, wisdom or expediency is not for reconsideration by courts. *Randolph* v. *Post*, 93 U. S. 511.

EMERY, J. One Crispus Graves by will appointed Marston, the appellee, its executor, and devised all the residue of his estate, after paying debts, etc., to school district No. 5 in Falmouth "for the purpose of educating the children of said district." Graves died, and his will was duly probated, and his appointment of Marston as executor was confirmed. Among the assets of the estate, which came to the executor, were $5,000 in U. S. bonds, agreed to be worth 6 % premium; a note for $1,700 against one Blake from which $1,000 was realized; and $900 Northern Pacific R. R. bonds. What these bonds were worth, the record does not show. The U. S. bonds and the $1,000 from the Blake note were loaned by the executor to one Fickett, and his notes therefor taken with what seemed to the executor, a good indorser and good real estate security, though the latter was only a second mortgage. The maker and indorser of these notes proved insolvent, and the supposed real estate security proved to be worthless, from a failure of the title. The whole amount was lost to the estate. In making these changes of investment, the executor acted under the advice of an attorney at law of this state. In February, 1885, the executor settled in the probate court his first account, which, as settled, showed a balance due the estate of $5,450.33. No reference was made in that account to any change or loss in investments. After settling this account, and without any order of distribution, the executor, who was an inhabitant of said school district, procured a district meeting to be called, and a vote passed to accept the said notes and $400 in cash in full payment of the residuary legacy, and in full discharge of all liability of the executor to the district. Thereupon the executor paid the $400 and turned over the notes to the district agent, and took his receipt in full, according to the district vote; and supposed he had thus finally and fully administered the estate, and procured his discharge from further liability.

In June, 1886, however, an heir-at-law of Crispus Graves, the testator, petitioned the probate court to cite the executor to file and settle his final account. The executor resisted the petition upon the ground that the petitioner had no interest in the estate;

but it was finally determined in the supreme court of probate, (*Rogers* v. *Marston*, 80 Maine, 404), that the petitioner had such an interest in the estate as entitled him to require an account, and that the executor must proceed to file and settle a final account of his administration. Thereupon the executor filed an account charging himself with the balance of his first account only ($5,450.33) without premiums or interest, and crediting himself with $400 cash paid the district, and with $6,000 the par face value of the notes delivered to the district as above stated. The probate court below allowed the account as stated, showing nothing due the estate, and the heir-at-law appealed to the supreme court of probate. The facts were there agreed upon and submitted to the law court for judgment.

The executor, upon the petition of an heir interested in the estate, had been ordered to file and settle a final account with the estate, in order that the amount of the balance available for distribution might be ascertained, preparatory to proper proceedings for a distribution among those lawfully entitled. *Rogers* v. *Marston, supra.* The account he has filed, while nominally with the estate, is really with school district No. 5, in Falmouth, and ignores the interests of the petitioner and all other persons. It is not such an account as the court has ordered, or as the law requires.

In the probate court, the whole estate as an entity is one party to any administration proceeding, whether carried on by executor, creditor, legatee or heir. Every such proceeding is in favor of, or against the estate. Every petitioner seeks something for or from the estate. The administrator or executor, as such, settles no accounts with persons,—no accounts with individual creditors, legatees or heir, nor with either class separately, but only with the estate as an entity. Creditors and legatees of specific legacies have claims against the estate, to be paid out of the whole estate according to their legal priority, without regard to any residuum. Such claims, in the case of solvent estates, are to be paid as fast as assets are realized, (after the statute time) without waiting for full and complete administration. Payments made on these are official payments,—necessarily go into the exe-

cutor's official account with the estate,—are properly debited to the estate and credited to the administrator as fast as paid.

Heirs and residuary legatees, however, have no claim against the estate. Their time does not come till the claims have been so far paid, and the estate so far administered, that the court declares a balance to exist for distribution. They may hasten that time by following up the tardy executor with citations as in this case, but until it comes they are not entitled to any payments to themselves. If such payments to an heir, or residuary legatee, are made by the executor without an order of distribution, they are purely personal and unofficial, and have no proper place in the executor's official accounts with the estate. In the case at bar, the payment of the cash and the delivery of other assets to the school district, were personal matters between the appellee and the district, which should not have been allowed in this official account. *Paine* v. *Moffit,* 11 Pick. p. 496 ; *Cowdin* v. *Perry,* 11 Pick. p. 511 ; *Granger* v. *Bassett,* 98 Mass. 462, 469.

It should not be inferred, however, from the above suggestions, that we think the question to be one simply of practice and procedure in the probate court. Something more is involved. For the probate court to allow in a final account or upon a decree of distribution, the payment of the $400 and the delivery of the notes to the district as lawful and hence as discharging the executor, is to assume to determine judicially two things,—first, that the school district is entitled to the residuum of the estate, and, second, that the school district has effectually released the executor from any further accounting for that residuum. These are both judicial questions, and outside of the jurisdiction of probate courts.

Probate courts have no constitutional nor common law origin. They were created by statute almost solely for administrative purposes, and what little "contentious jurisdiction" they may possess is only incidental to their administrative jurisdiction. They have no administrative powers even, beyond those conferred by statute. So true is this, that in the absence of a statute authorizing it, a probate court cannot empower an administrator to sell land for payment of debts. Without the statute, he would

need resort to a court of chancery powers. The probate court has the power, upon proper proceedings, to make a decree of distribution, and, if there be no will, to determine who are the heirs and the share of each, *Loring* v. *Steineman*, 1 Met. 204 ; R. S., c. 65, § 27 ; but it has no power in this state to construe a will,—to determine its effect upon the distribution of the estate,—or to adjudicate between the heirs and the residuary legatees. Such power is given to probate courts in some states, but in our system it is reserved to the law and equity courts. Where there is a will, as in this case, the probate court may determine when the estate is fully settled, and may then order the executor to distribute the balance according to the will, so far as the will directs, otherwise according to law, but there its power ends. What the will does direct, or whether it directs at all, are questions for another tribunal. The executor like other officers, must learn the law, and unlike many other officers, he can obtain from the equity court an authoritative construction of the will, and authoritative directions how to perform the duties of his trust, so far as legacies are concerned.

In this case there is a question whether the school district can take under the will, and whether, if they can take, they have not by their action rejected the legacy. This is a question between the school district and the heirs, which can be determined only by the court of equity or law jurisdiction upon proper pleadings, notice and hearing. Not even the supreme court of probate, upon appeal, can exercise the equity powers conferred upon the supreme judicial court. It can make such decrees only as the probate court below should have made. *Grinnell* v. *Baxter*, 17 Pick. 383 ; *Lincoln* v. *Aldrich*, 141 Mass. 342. Again, assuming that the school district will be found entitled to the residue of the estate, questions will arise after the decree of distribution,—whether the district meeting was legal,—whether the vote was within the district's power,—whether the agent was authorized to discharge the district's claim,—whether he in fact received the $400, etc.,—in fine, whether the district is barred from recovering the whole in a suit at law. It is true these last questions have not yet arisen, but when they do arise, they will be questions between

the school district and the executor, to be determined like other contentious questions by a court of law, or equity.  *Knowlton* v. *Johnson*, 46 Maine, 489.

The conclusion is inevitable, that the decree appealed from, assumed to adjudicate and determine matters clearly outside the jurisdiction of the probate court, and hence must be annulled. We are urged, however, to go on, and construe the will, and adjudicate between the school district and the heirs on the one hand,— and then between the school district and the executor on the other, and thus settle and compose in advance the questions likely to arise, or already mooted, and so save time and expense.  It must be remembered that we are now sitting as a supreme court of probate, considering a probate proceeding; and after having determined that we have here no jurisdiction over these questions, it would be incongruous to say the least, for us to assume to determine them.  We think the party desiring the determination of any of these judicial questions, should apply to the proper court with fit and appropriate process and pleadings.  By such a course only, can he obtain careful consideration and authoritative judgment.

Having found that the decree below should be annulled, it remains to consider what decree should be made.

The executor contends that if he cannot be credited with the amount of the balance as turned over to the school district, he should be credited with it, as lost without his fault.  He urges that he made the unfortunate investment in good faith by the advice of an attorney at law, and that the law cannot be so rigorous as to hold him personally responsible in such case.  The law, however, requires not only good faith, but prudence of the executor, and a degree of prudence commensurate with the nature of his duty.  That duty is to regard the safety of the fund as paramount to any rate of income.  He has no occasion to make any profit for the estate, other than that obtainable from the highest security.  It is no assumption of superior financial wisdom to say that the conversion of U. S. bonds and cash into personal notes secured by a second mortgage of real estate with a faulty title, is an act far below the standard of prudence re-

quired of an executor. The entire business public would say the same.

The fact that a lawyer advised such foolish conduct, does not relieve it of its foolishness, nor save the executor from its consequences. While the advice of a lawyer may repel imputations of malice and bad faith, it can furnish no further justification. If the advice be wrong, and the client follow it, his conduct is as wrong as the advice. Lawyers are not privileged to advise foolishly, and their clients are not shielded by their foolish advice. The court will look at the act, and not at its adviser, in judging of its merit or demerit.

It is evident from these considerations that the executor can not be allowed any credits whatever, not even for commissions, as these were credited to him in full five per cent in his former account. On the other hand in addition to debits already made he must be debited with the premiums on the U. S. bonds, (agreed by the parties to be six per cent.) which he has not accounted for. He should further be debited with interest on the whole amount of the last balance and the premium, from the date of the settling his last account, to the date of his settling this his final account, for the reason that he made a wrongful use of the money, and needlessly delayed its distribution, only rendering this final account after much resistance. For the same reason we think the executor should pay the costs of this appeal.

We are asked to reopen the first account, to have the executor charged with interest before that time and to reduce the credit for commissions. That settlement of account, however, was not appealed from, and we think it best not to now disturb it.

The order of this court is, that the decree of the probate court below be reversed and annulled, and a decree be made in the supreme court of probate, in accordance with this opinion, and such decree certified to the court below.

*Decree accordingly.*

PETERS, C. J., WALTON, VIRGIN, FOSTER and HASKELL, JJ., concurred.