Strafford,
April 3, 1934.

FRED K. WENTWORTH, *Ex'r v.* JEREMY R. WALDRON, *G'd'n.*

560

*Hughes & Burns* and *Dwight Hall* (*Mr. Burns* orally), for the plaintiff.

*Sewall & Waldron* and *Oscar Neukom* (*Mr. Sewall* orally), for the defendant.

BRANCH, J. The master ruled, in substance, that the allegations of the plaintiff's bill did not state a case for equitable relief. In considering the propriety of this ruling it is logically necessary to give attention first to the assertion made by the defendant in his answer that the superior court is "without authority" to nullify his waiver of the provisions of the will of John N. Haines or to issue the injunction prayed for. This position is untenable. A guardian is a fiduciary whose conduct is subject to regulation by a court of equity in cases where the remedy at law is inadequate. *Sparhawk* v. *Allen*, 21 N. H. 1; *Dolbeare* v. *Bowser*, 254 Mass. 57; 12 R. C. L. Tit, Guardian & Ward, s. 60. The original equitable jurisdiction of the superior court over trusts (P. L., c. 317, s. 1) "extends to any fiduciary or trust relation where the remedy at law is not completely adequate." 21 C. J. Tit, Equity, s. 93, and cases cited.

It cannot be said that the remedies available against guardians in the probate courts are completely adequate. The jurisdiction of such courts is limited (P. L., c. 293) and they have not been clothed with general equitable powers, even with reference to those fiduciaries who are appointed by them. Matters affecting the conduct of fiduciaries which have not been definitely placed by statute within the exclusive jurisdiction of probate courts are still cognizable in equity. See *Rockwell* v. *Dow*, 85 N. H. 58, where the cases are reviewed. "The general line separating probate jurisdiction from that of the superior court is not difficult of ascertainment. The distinction is that between things which are 'incident to the business of conducting the administration' and 'a settlement with the judge of probate' concerning administration already had. *Patten* v. *Patten*, 79 N. H. 388, 392, 393." *Rockwell* v. *Dow, supra*, 66.

There is still "undoubted jurisdiction in equity to advise the fiduciary as to all doubtful questions touching his duty to act" (*Rockwell* v. *Dow, supra*, 68) and the power to advise presupposes the power to direct and enjoin. Interested parties may maintain a bill to compel a fiduciary to perform his trust. The existence of this principle was apparently assumed by the court to be unquestioned in *Greeley* v. *Nashua*, 62 N. H. 166, 167, where we read: "Trustees are not required

to incur risk in the management or distribution of the trust fund. In cases of doubt they may apply for the direction of the court, or they may decline to act without its sanction, leaving the parties interested to bring their bill to compel a performance of the trust." To the same effect is *Dimmock* v. *Bixby*, 20 Pick. 368, 375. In *Patten* v. *Patten*, 79 N. H. 388 such a bill was brought and maintained. We, therefore, conclude that the superior court has power to act in the premises.

The extent to which a court of equity may properly intervene to direct or regulate the action of a trustee or other fiduciary depends, however, upon the terms of the authority under which he acts. It is well settled law that "Where discretion is conferred upon the trustee with respect of the exercise of a power, its exercise is not subject to control by the court, except to prevent an abuse by the trustee of his discretion." Am. Law Inst. Restatement of Trusts, Tent. Draft No. 3, s. 181. The same rule is equally applicable to other fiduciaries. The conduct of the defendant must be judged in the light of this principle.

In *Penhallow* v. *Kimball*, 61 N. H. 596, it was held that a court of equity "may elect for the lunatic where the lunatic has the right of election" and this principle was restated in *Page* v. *Library*, 69 N. H. 575, decided in 1899. Some of the considerations which should govern a court in such a situation were stated in the *Penhallow* case as follows: "In making such election the court is guided by considerations for the benefit of the lunatic, without regard to what the advantage may be to his heirs. If, in this case, it is found that the effect of an election to waive the provisions of the will will be to divert property from the channel in which the testator intended it to go, and if the diversion is not required by the wants and circumstances of the widow, the prayer of the bill cannot be granted."

The statute under which the defendant acted was passed at the next session of the legislature following the decision in *Page* v. *Library*, and reads as follows:

"The guardian of an insane person shall have the same right that his ward would have, if sane, to waive the provisions of a will in favor of his ward, intended to be in lieu of dower, or curtesy, . . . and distributive share, and shall likewise have the power to release said ward's right of dower or curtesy and his homestead right, and take for his ward the same property and rights that the ward would take and have if sane; and the guardian . . . shall have the same right to an extension of the time within which such waiver may be filed, by permission of the judge of probate . . . that the ward, if sane, would have." Laws 1901, *c.* 6, *s.* 1; P. L., *c.* 291, *s.* 3.

The plaintiff argues that the purpose of this statute was merely "To obviate the necessity of petitioning the Court to waive the provisions of the will in favor of an incompetent person," and strenuously insists that the conduct of a guardian acting under authority thereof must be governed by the considerations enumerated by the court in the *Penhallow* case and others of a similar nature. In support of this contention he cites the following cases which seem to lend it support. *Dolbeare* v. *Bowser*, 254 Mass. 57; *In re Connor's Estate*, 254 Mo. 65; *Primeau* v. *Primeau*, 317 Mo. 828.

We think that the reason for the enactment of the statute above suggested is wholly inadequate and that the language used by the legislature clearly indicates a purpose to confer upon guardians a wider discretion than that which the court, in the *Penhallow* case, said it possessed. For this reason the Massachusetts and Missouri cases above cited are not to be followed. Whether the passage of this act was motivated by the decision in *Page* v. *Library, supra*, is a barren speculation.

In this connection it should be stated, however, that the principles enumerated in the *Penhallow* case for the guidance of a court of equity in making an election for a lunatic have been severely criticized, and that their soundness is open to serious question. The idea that the resultant diversion of property from the channel in which the testator intended it to go furnishes an equitable reason for refusing to permit a waiver seems to be clearly unsound. As pointed out by the Illinois court in *Emmert* v. *Hill*, 226 Ill. App. 1, the right of a husband to dispose of his property by will is subject to the paramount legal rights of his widow in the estate, and there is no legal or equitable reason why his heirs or beneficiaries should reap an advantage because the widow is insane. Neither is there any legal or equitable principle by which he is empowered to satisfy her claims upon his estate by making suitable provision for her support in his will. A widow is not to be penalized because she is insane.

The soundness of the other declaration in the *Penhallow* case, *i.e.* that the court should consider only the personal interests of the widow, without regard to the interests of her heirs, has also been seriously questioned. Thus in the case of *In re Stevens Estate*, 163 Ia. 364, we read: "It is quite natural in such a case for a widow, if she has heirs, to take them into account when she makes a voluntary election, and, this being true, the court may do the same thing without being charged with an abuse of discretion."

It is unnecessary, however, for us to pass definitely upon the cor-

rectness of the rules laid down in the *Penhallow* case for, as indicated above, we think that in the statute of 1901 the legislature did something more than confer upon guardians the discretion previously exercised by the court.

In *First Nat. Bank* v. *MacDonald*, 100 Fla. 675, 681, which is one of the cases cited by the plaintiff, the Florida court drew a distinction between two possible situations as follows: "As to the same widow, we have shown that the act of renunciation is personal, absolute, and uncontestible. The same right might be exercised by her guardian for her if specifically directed by statute; but our statute not having so directed she is left to her remedy in a court of equity." We think that under our statute we have a case like that supposed by the Florida court where the guardian is specifically directed to exercise the same rights which the widow would have, if sane. The plain language of the act seems to compel this conclusion. "The guardian of an insane person shall have the same right that his ward would have, if sane, to waive the provisions of a will in favor of his ward. . . . ." In such a situation it seems clear that the guardian should try to place himself as nearly as possible in the position of the widow and take such action as she would probably take if sane. Such was the advice given to a guardian by a probate court in Michigan, and action in accordance therewith was sustained in the case of *In re Andrews Estate*, 92 Mich. 449.

With reference to the performance of this duty it has been well said that "If it were permissible to determine what she would do by the course which experience shows is pursued by the average of mankind, we would say unhesitatingly that she would take all she had a lawful right to." *Trower* v. *Spady*, 117 Va. 173.

Clearly the statute invests the guardian with discretion as to the exercise of the power to waive or accept the provisions of the will. There is nothing in the allegations of the bill which, if proved, would justify the conclusion that in making his election he has abused his discretion.

The allegations that the income from the estate of the husband is sufficient for the comfortable support and maintenance of the widow; that the waiver of the will and release of dower and homestead are not necessary in order to provide for her personal needs; that the effect of the election made by the defendant will be to divert property of the testator from the channels in which the testator intended it to go, and to increase the widow's estate for the direct benefit of her heirs and beneficiaries, are singly and collectively inconclusive upon

the question whether the guardian's discretion has been legitimately exercised. The allegation that the guardian's election "is not to the advantage of his ward" is nothing more than a conclusion of fact drawn by the pleader from the other allegations of the bill, and serves only to indicate a difference of opinion upon this point between him and the guardian. The allegation that "the effect of said election is to perpetrate a fraud upon the estate" of the testator is merely a conclusion of law unsustained by the recital of any facts which lend it support. It therefore follows that the rulings of the master were correct, and in accordance therewith the order must be

*Bill dismissed.*

All concurred.