In the Matter of LOUISE BRUCE HILLS, an Incompetent Person.

Supreme Court, New York County, October 29, 1934.

*Reynolds, Goodwin & Wilson,* for the petitioner, committee of the property of Louise Bruce Hills, an incompetent person.

*Allen Evarts Foster,* for the executors and trustees under will of John Marshall Hills, deceased.

*J. Rhodes O'Reilly,* special guardian for the incompetent.

JOHN GODFREY SAXE, Referee.   Reference to hear and report as to whether the Supreme Court should elect, in behalf of the widow, an incompetent, to accept or reject the testamentary provision in her husband's will in her favor (*Matter of Hills,* 264 N. Y. 349).

The mathematical difference in rejecting or accepting these provisions of the will is between $200,000 and $300,000 in favor of rejection.

Mrs. Hills is a demented old lady, who, since two years before her husband's death, has been confined in an institution suitable for her proper care and maintenance.   I have considered the two basic principles underlying the question of election, *first,* the welfare of the incompetent (*Matter of Brown,* 240 N. Y. 646, affg. 212 App. Div. 677, on opinion of YOUNG, J., below), and, *second,* what, in all probability, her choice would have been if she had been of sound mind (*Matter of Hills, supra,* 353, 354).   Following the submission and examination of full briefs, I discussed these questions orally with counsel on the record.   I have found that, so long as the widow remains in her present condition, considerations of her welfare afford no basis for choice.   She is being well cared for. Only few extras can be thought of from time to time by the superintendent of the institution or by her sister who is committee of her person.   I have found that, if she should recover, although that is unlikely, it would be better for her welfare that the election be made. I have found that, in all probability, her choice, if she were of sound mind, would be to reject the testamentary provisions.   She was incompetent before the will was written, and did not and could not acquiesce in it.

Counsel for the committee of the property refer to the question as " closely balanced," and my determination as a " difficult decision."   Counsel for the executors, in their brief, state: " The court should take into consideration the probabilities as to what Mrs. Hills would do if she were able to make an election on her own

behalf," that " a careful inquiry has not revealed any evidence indicating what Mrs. Hills would do, if sane," and that " it is futile to conjecture what Mrs. Hills would do if she were sane." These statements, in effect, concede that, in this particular case, there are no facts, pro or con, except what I hold to be a persuasive mathematical differential. One of the cases on which counsel for the executors relies gives the common sense view of such a case as this, that " to take that property which is the most valuable " furnishes " a just and proper rule upon which to proceed in most cases." I have thought out a variety of situations of fact where the Supreme Court should elect, for an incompetent, to take under the will. Here, however, no persuasive fact has been called to my attention except this large differential in values, which I believe to be a just and proper rule in most cases and to be unmistakably applicable here.

Counsel for the executors, in his brief, also urges that " To assume that Mrs. Hills, if sane, would defeat her husband's will is to assume that she would act as no decent wife would act under similar circumstances." This cannot be so. The suggestion disregards the public policy of the State of New York, as enunciated by its statutes for nearly seventy-five years, that no person having a husband, wife, child or parent shall by will give more than one-half part of his estate to charity (Laws of 1860, chap. 360; Dec. Est. Law, § 17). The " sole " purpose of this statutory policy was " to protect " these " natural " objects of a testator's bounty. If a gift is not made by will, or if a testator is not survived by any of the natural objects of his bounty enumerated in these statutes, there is no prohibition. The statutes do not even compel the testator to leave any part of his property to husband or wife. (That reform came more recently, when the Foley Commission proposed and the Legislature enacted new section 18.) They do not prevent him from giving all his estate to charity during his lifetime. The act was aimed simply at the giving of " an undue proportion " to charity " by will," where wife and certain relatives have " a better claim." (*Amherst College* v. *Rich*, 151 N. Y. 282, at p. 334; *Matter of Blumenthal*, 126 Misc. 603, 605; *Matter of Hills*, 150 id. 518, 519.) Every widow is entitled to be advised that she may take what her husband has chosen to give her, and, if he has given an undue proportion of his estate to charity, that there is a statute, made for her protection, that part of it may be saved for her benefit. Every widow, with the greatest propriety, may accept the benefit of the public policy of the State; no widow is " indecent " because she accepts that to which she has " a better claim."

I have overruled a plea of *res judicata* asserted by the special guardian. He relies on an order of the Supreme Court, dated

May 1, 1933. This order was contained in the printed papers before the Court of Appeals, but the petition on which it was made and the minutes of the hearing before the surrogate pursuant to which it was applied for, were not before the Court of Appeals. The Court of Appeals said (*Matter of Hills, supra,* p. 354): " Here the Supreme Court has not acted. The committee has contested the validity of the residuary bequest without prior application to that court." The special guardian urges that, by said order, the Supreme Court had acted, and pursuant to specific direction of the surrogate had made prior application, and that that order was the very determination which the Court of Appeals held to be necessary, to wit, one making an election on the part of the Supreme Court, on the widow's behalf, to claim the benefits of section 17. The documentary evidence, which was not before the Court of Appeals, gives some support to his contention, but I am constrained to find against him as to his claim of *res judicata,* because the order was part and parcel of the papers on appeal before the Court of Appeals in this case, and that court has held that the Supreme Court has not acted, and must act now.