SIDNEY W. THAXTER
AS GUARDIAN AD LITEM
FOR
KATHLEEN T. SMALL
APPELLANT FROM
DECREE OF JUDGE OF PROBATE

York.   Opinion, December 1, 1958.

*Linnell, Perkins, Thompson,*
*Hinckley & Thaxter,* for plaintiff.

*Waterhouse, Spencer & Carroll,*
*N. B. & T. B. Walker,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL.

WEBBER, J.   On report.  Charles C. Small died testate and possessed of a substantial estate.  In the third paragraph of his will appeared the following provision which contained the only reference to his widow: "THIRD: Over our many years of life together, I have purchased and given to my wife, Kathleen T. Small, monies, securities and other real and personal property and estate to an amount sufficient for all of her needs, having in mind her age and mental and physical condition, and which, in the aggregate, amounts to a sum considerably in excess of any legal share of my said wife in my estate, wherefore, I make no provision for my said wife in this my Will."

The bulk of the estate was placed in trust for the benefit of the testator's two adopted daughters, a nephew and two nieces.  The widow was at the time of the execution of this will and at the time it was offered for allowance mentally incapacitated and confined as a patient in a hospital under commitment as an insane person.  Very shortly after the death of the testator, guardians were appointed to conserve the separate and not inconsiderable estate of the elderly widow.  One of the two guardians was also one of the two executors of Mr. Small's will.  Mindful of the possible conflict of interest which might arise as a result of the dual capacity of one of the guardians, they filed a petition in the Probate Court for the appointment of the appellant as guardian *ad litem*.  They further requested that the Probate Court "make due inquiry into the premises and after hearing determine whether or not the best interests of the said Kathleen T. Small under all of the circumstances of the case will be served by the filing of Notice of Claim of distributive share in this Court and pending hearing to instruct the Guardian Ad Litem appointed by this court to file such

notice as the court may direct, subject to final decree of this court on this petition."

Pursuant to this petition, the appellant was appointed guardian *ad litem* and seasonably filed notice of claim of the widow's distributive share of the estate "subject to the decision of this (probate) court as to whether it would be for the best interest of said Kathleen T. Small to claim her said right *provided that this court has authority to so decide,* and reserving all rights of appeal from any such decision or decree as is provided by law." (Emphasis supplied.) After hearing, the Probate Court disallowed the claim of the distributive share as not in the best interest of the widow. From this order an appeal was taken to the Superior Court sitting as the Supreme Court of Probate. The matter there being in order for hearing *de novo,* additional evidence was taken out and the case was reported for our final action.

Quite fortuitously, the illness of Mrs. Small was not of a permanent nature and she was discharged from the hospital in time to participate in the hearing now reported. Qualified medical authority, not challenged, pronounced her competent to testify in court and decide for herself her future needs. Her testimony records her unequivocal ratification of the action of her guardian *ad litem* in claiming her statutory interest as widow and leaves no doubt that if she had been competent to act in her own behalf at the time of her husband's death she would have taken like action. This appeal raises the issue as to whether the Probate Court had jurisdiction to disallow a notice of claim filed on behalf of an incompetent widow by her guardian or guardian *ad litem.* That issue has not been raised heretofore in this jurisdiction.

R. S., 1954, Chap. 170, Sec. 14 provides in part for the claim by a widow of her distributive share of the estate of her deceased husband. The statute deals with the case of the testator who has made no provision for his widow in his

will as well as the case where some provision has been made. The section further provides in part: "Such notice *may* be filed by an insane widow * * * by * * * her guardian, or by a guardian ad litem appointed for the purpose." (Emphasis supplied.) Attention is at once directed to the use of the word "may," ordinarily permissive in its connotation. The legislature did not intend an absurd result. It used the word "may" deliberately and advisedly. The guardian or guardian *ad litem* stands in the shoes of his ward and must protect her interest. There are many instances where the benefits conferred by the will equal or exceed the distributive share guaranteed by the statute. In such cases the legislature clearly did not contemplate that the guardian or guardian *ad litem* would claim the statutory interest to the detriment of the ward. We construe the language of the statute as imposing upon the guardian or guardian *ad litem* a duty to exercise a sound judgment and discretion in determining whether or not the best interests of the ward require that the statutory claim be filed.

It is important to note that this discretion was conferred upon the guardian or guardian *ad litem,* as the case may be, and not upon the Probate Court. In some states, similar statutes specifically provide that the decision of the guardian or guardian *ad litem* must have the approval of the court. No such language or its equivalent appears in our statute. It has many times been stated that the Probate Court is a statutory court of very limited jurisdiction. *Thompson, Appellant,* 114 Me. 338, 340; *Roy C. Knapp, Appellant,* 145 Me. 189, 192. There is no provision of statute, express or implied, which gives the Probate Court authority to approve or disapprove the election made by the guardian, and the disallowance of the claim in this instance was beyond its power.

We recognize that in some situations the fiduciary may feel compelled to seek the aid of a court of equity in making

his election. Moreover, parties in interest may in some instances require equitable relief when it appears that the election by the fiduciary stems from bad faith or amounts to an abuse of discretion. A court of general equity jurisdiction is clearly competent to afford relief in such cases. Under somewhat similar circumstances, the New Hampshire court held that a court of general equity jurisdiction was a proper tribunal in which to resolve any issue involving the alleged bad faith or abuse of discretion of a guardian making an election for his insane ward. *Wentworth* v. *Waldron* (1934), 86 N. H. 559, 172 A. 247. We are not required to decide here whether or not the more restricted equity powers of a probate court are broad enough to permit it to act in such premises. The proceeding before us is not a bill in equity. It is a proceeding in the nature of a petition by the guardians addressed to the Probate Court setting forth facts which show the necessity for an election on behalf of their ward, and which further show that the petitioners are disqualified by conflicting interests from making the election themselves. The petition seeks the appointment of a guardian *ad litem* to act in their place. This action on the part of the petitioners was commendable and proper. They could do no less in the proper performance of their duty to their ward. The petitioners, however, went further, apparently acting on the mistaken theory that the election was a province of the Probate Court and that its discretion would direct and control the action of the guardian *ad litem*. They further prayed that the court would determine what the best interest of the ward required and would instruct the guardian *ad litem* as to what action he should take. In this latter respect the petition was at best premature. The guardian *ad litem* who by statute was to make the election was not himself seeking the aid of equity in making his determination nor was this a bill to set aside the election of the guardian *ad litem* as made in bad faith or as constituting an abuse of his discretion. Even assuming for the pur-

pose of argument (and we do not here so decide) that the equity powers of probate courts are broad enough to confer jurisdiction in such matters, there was nothing before the court at this stage on which it could act save only the appointment of a guardian *ad litem*.

It is suggested that the notice of claim filed by the guardian *ad litem* was not effective because it was conditional. We do not so construe it. The appellant was faced with a petition underlying his appointment which clearly suggested the legal hypothesis that the controlling discretion would be that of the Probate Court rather than that of the appellant. The state of the governing law had never been declared in this jurisdiction. By his notice the appellant made it clear that if the choice was his to make, he elected to claim the statutory interest for his ward. He left the determination to the Probate Court if and only if authority to make that election was by law vested in that court. If, however, the law was as the appellant conceived it to be, the alleged condition was inoperative. We hold that the election was his to make and that he made it. Once made, it will stand in the absence of a showing of bad faith or abuse of discretion. *Morse* v. *Trentini* (1956), 121 A. (2nd) (N. H.) 563.

The matter on report comes to us for such action as might have been taken by the Supreme Court of Probate. We are mindful that in that capacity our powers are circumscribed by statute. *Hanscom* v. *Marston,* 82 Me. 288, 297. We hold that for the reasons above stated the Probate Court was powerless to take the action it did in the pending proceeding and its decree must be set aside.

Lest we seem to decide a case of novel impression on narrow jurisdictional grounds without any consideration of the merits, it may be noted that a bill in equity addressed to a court of general equity jurisdiction and charging the appellant with abuse of discretion would have produced no dif-

ferent result. The Probate Court below purported to balance equities and find them weighted against the claim of statutory interest on behalf of the insane widow in this case. We have read with interest the texts and cases cited which disclose very divergent points of view as to what constitutes the "best interest" of an insane ward. See Page on Wills, Vol. 4, Page 37, Sec. 1363 and cases cited; also Annotations in 74 A. L. R. 452 and 147 A. L. R. 336. It seems rather significant that, almost without exception, the cases deal with the situation in which *a substantial provision* has been made for the widow in the will and the issue is then whether or not "her best interest" requires that the statutory interest be claimed in preference to the testamentary provision. In the case before us *no provision* was made for the widow by the will of the deceased husband. As was stated by Justice Stearne in a vigorous dissenting opinion tendered in the case of *In Re Harris* (1945), 351 Pa. 368, 41 A. (2nd) 715, 730: "In every case cited by the majority the testator had, by his will, *made adequate provision* for his widow in a measure almost equivalent to her statutory intestate share. In none of the cases was the widow disinherited. But in no reported case which I have discovered, has this principle been applied to allow a widow to be disinherited because she possessed an individual estate of her own, was old, insane and therefore would not be able to enjoy it. Such considerations are, to my mind, wholly unsound and untenable." Where the benefit to the widow under the will was comparatively slight as compared to her statutory interest, the Kentucky court refused to look beyond the financial interest of the widow. *Ramsey's Ex'r*. v. *Ramsey* (1932), 47 S. W. (2nd) (Ky.) 1059. And where there was a "persuasive mathematical differential" of over $200,000 between the benefit conferred by will and that provided by law, a justice of the Supreme Court of New York felt that this must be recognized as a paramount consideration and that a common sense view would compel the assumption that the

widow would have elected to take the more valuable right. *In Re Hills* (1934), 157 Misc. 109, 283 N. Y. S. 733. All courts apparently agree that in making the election, the guardian must place himself as nearly as may be in the shoes of his ward. Each case must of course rest on its own facts. No doubt there have been and will be instances in which widows will be strongly impelled to follow the wishes of their deceased husbands as expressed in their wills even though such acquiescence works to the monetary disadvantage of the widow, but in a day of mounting inflation and of nagging doubt as to the economic future we think the case will be rare and unusual indeed in which the widow, cut off by her husband's will *from any benefit whatever,* will fail to claim her statutory interest. Above all, in cases where the guardian must elect for his incompetent ward, the overriding consideration must be that the ward *not be penalized by her insanity. Wentworth* v. *Waldron, supra; Mead* v. *Phillips,* 135 Fed. (2nd) 819, 829; *Emmert* v. *Hill* (1922), 226 Ill. App. 1. In determining whether in a particular case the ward is being penalized by her insanity we must not lose sight of the fact that, if sane, the widow could have claimed her statutory interest and no one could have questioned her right to do so. The facts of the instant case serve to illustrate graphically and support the view that except in rare and unusual circumstances a widow will not accept the provisions of a husband's will which confer on her no benefit and offer no protection for her future security. The ward in this case has made it plain that had she been competent in the first instance she would have claimed her legal share. Quite obviously, to have deprived her of that interest would have been to penalize her for her unfortunate mental illness. Doubtless the Probate Court, if it had had the advantage of the ward's testimony, would itself have reached a different conclusion. It is apparent therefore that no injustice results from a decision based upon technical grounds, for upon these facts and the applicable law as we

view it, the result would have been the same regardless of the nature of the proceeding. The entry must be

> *Appeal sustained. Decree below vacated. Remanded to the Probate Court for further proceedings in accordance with this opinion.*