In the Matter of the Petition of LUCY MAE B. SKILLMAN, the Widow of JOSEPH H. SKILLMAN, Deceased, for a Determination as to the Construction or Effect of the Disposition of Property Contained in the Last Will and Testament of JOSEPH H. SKILLMAN, Late of the Town of Huntington, Suffolk County, New York, Deceased.

THE BOARD OF FOREIGN MISSIONS OF THE METHODIST EPISCOPAL CHURCH and Others, Legatees, Appellants; LUCY MAE B. SKILLMAN and Others, Respondents

Second Department, March 27, 1936.

*Ben A. Matthews* [*Albert C. Rothwell* with him on the brief], for the appellants

*George H. Carleton* [*John R. Vunk* with him on the brief], for the petitioner-respondent.

DAVIS, J.  The testator, Joseph H. Skillman, who died May 6, 1934, left him surviving his widow, Lucy Mae B. Skillman, and one sister, Maria C. Skillman.  His will, executed September 29, 1932, was duly probated July 13, 1934.  By this proceeding the widow sought construction of certain paragraphs of the will, particularly in respect to bequests made to four religious or charitable corporations

Chiefly the controversy concerns paragraph 4th of the will, although it is claimed that other paragraphs shed light on the testator's intent.  Admittedly more than one-half of the estate was bequeathed to certain religious or charitable corporations, in violation of section 17 of the Decedent Estate Law.  When gifts are

made in contravention of the provisions of section 17, they will be diminished to the statutory limit; and the main purpose of the testator will be carried out in so far as it does not transgress the superior rights of others. ( *Unger* v. *Loewy*, 236 N. Y. 73.) The primary question here concerns the manner in which the payment shall be made after the illegal parts of the gifts have been excised. It appears somewhat inconclusively that the net estate amounts to about $92,000.

It is evident from the language of the will that the testator had strong hope that children would be born of the marriage. The gifts to the corporations were subject to that contingency. After a bequest of $2,500, household furnishings and other personal property to the widow, the will provided in brief that the residue was devised and bequeathed to a trustee in trust, to be divided into two equal parts. In paragraph 4, subdivision a, it was directed that the income from one-half thereof was to be paid to the widow in quarter-annual payments during her life, with the remainder to children, if any. In the event that there was no child, then the remainder passed to the four corporations in equal shares.

In paragraph 4, subdivision b, it was provided that the income of the remaining one-half was to be paid quarter-annually to his children; and the principal sum was to be divided into as many equal parts as there were children surviving him, with provision for issue of deceased children and for accumulations during minority. The remainder was to be paid to the children or their issue — one-half at the age of twenty-five and the other one-half at the age of thirty-five. There were other provisions for contingencies in case of the death of any children before the remainder vested. It was only in case no children survived that the remainder of this one-half passed to the named corporations.

The issue presented to the surrogate was, in what manner the will should be construed in making deduction of the part of the estate the corporations were not legally permitted to take. It involved the problem of discovering the dominant purpose and intent of the testator from the language of his will, and of considering the natural equities in respect to the objects of his bounty. This question was determined by leaving paragraph 4, subdivision a, intact and deducting the excess from paragraph 4, subdivision b. This determination permitted the widow to receive the income from the trust; and, in addition, she and the sister took by distribution the excess under the rules of intestacy. (Dec. Est. Law, § 83, subd. 4.) The corporations would receive their respective shares in part on final settlement and the remainder at the death of the widow. Of course, the amount each was to take could not be

determined until an accounting was had and computation made of the value of the widow's life estate, which would fix the amount of the one-half passing to the corporations.

One of the corporations seems satisfied with this result; the other three have appealed. The theory offered here for remodeling the will is that the corporations should receive immediately all that they may legally take. Their suggestion is that paragraph 4, subdivision a, be so construed that the widow take the life estate and the remainder as well; and that they take outright under paragraph 4, subdivision b. This is based on the ground that the testator under all of the provisions of the will evinced a purpose that the widow should not take more than he was compelled to give her under the provisions of section 18 of the Decedent Estate Law; and that by analogy the rules prevailing under that section should be applied. They say nothing concerning the possible merger of the two estates in paragraph 4, subdivision a, under this construction, and we do not consider it, for we reject this proposed interpretation. Under the theory advanced, the widow would take a remainder of which she could not come into possession during her lifetime, and, therefore, could receive no benefit therefrom. Sections 17 and 18 are practically unrelated, and we find little of analogy between them in applying rules of construction except that both are intended to protect the family of a testator from acts of anger or improvidence.

The testator and the draftsman of the will entirely overlooked the provisions of section 17. That long-existing statute was enacted for the benefit of the members of the family of the testator — the natural objects of his bounty; and to protect them from improvident gifts to their neglect. He owed to them a duty " which the Legislature esteemed of such sanction as to require its discharge before he could exercise his charity." (*Matter of Tone*, 186 App. Div. 361, 367; *Amherst College* v. *Ritch*, 151 N. Y. 282.) When a charitable or religious corporation is given by a will more than it can legally take, it is not greatly concerned in the disposition of the excess. It must take its legal share somewhat in subordination to the rights and interests of those whom the law protects.

Of course, the testator did not foresee the possible illegality of his will in part or the consequences that would follow. We may assume that he understood what is commonly known — that the law will construe a will in favor of a widow or a blood relation and not in favor of a stranger, for that is the well-established rule. (*Matter of Rooker*, 248 N. Y. 361, 364; *Matter of Moss*, 230 App. Div. 741.) When by reason of invalidity of part of a will it is necessary to make a " new pattern " in distribution, courts will preserve the testamentary scheme as far as possible, but will " recognize relative

equities," following the general intent of the testator as far as it is disclosed in the will. (*Matter of Devine*, 147 Misc. 273.) Here the relative equities of the widow and, to a lesser degree, those of the sister, are outstanding.

As has been stated, the construction adopted by the surrogate leaves the widow's life estate intact, giving to her the larger portion of the illegal excess and the smaller portion to the sister. The sister was not mentioned in the will, so that to this extent the small portion she will take was not within the contemplation of the testator; but the result is unavoidable by reason of the provisions of section 17. The corporations will receive at once on distribution a large part of their legal share, and the remainder at the death of the widow. This disposition seems highly equitable, and follows the main plan of the will except so far as it is deemed illegal. The dominant purpose of the testator was to provide for his family. These corporations take only by reason of the fortuitous circumstance that the testator died before children were born to him. They should be content that they have fared so well, instead of making an attempt to cut down the benefits going to the members of the testator's family.

We agree with the conclusions of the learned surrogate; and the decree, in so far as appeal is taken therefrom, should be affirmed, with costs to respondent Skillman, payable out of the estate.

Present — LAZANSKY, P. J., YOUNG DAVIS, JOHNSTON and ADEL, JJ.

Decree of the Surrogate's Court of Suffolk county, in so far as an appeal is taken therefrom, unanimously affirmed, with costs to respondent Skillman, payable out of the estate.