In the Matter of the Application of ASHER BLUMENSTIEL and Others, for a Determination as to the Validity, Construction or Effect of the Disposition of the Property Contained in the Last Will and Testament of ALEXANDER M. BLUMENSTIEL, Deceased.

CORA BLUMENSTIEL, Appellant; ASHER BLUMENSTIEL and Others, Respondents.

Fourth Department, November 6, 1936.

*Glenn L. Buck*, for the appellant.

*Charles Berlin* and *Samuel Levy*, for the respondents Blumenstiel.

*Vincent J. Mulvey*, for the respondent Central Trust Company.

*Jacob Ark*, for Myer Miller, as special guardian for respondent-infants, and for other respondent-legatees.

TAYLOR, J.    This is an appeal by Cora Blumenstiel from an order of the Surrogate's Court of Monroe county entered April 13, 1936, denying her motion to reopen a decree construing the will of Alexander M. Blumenstiel.    The decree had been entered June 25, 1934.

Alexander M. Blumenstiel died April 6, 1933, leaving his widow, Cora Blumenstiel, and the following brothers and sister as his sole next of kin, to wit, Joseph, Asher, Samuel and Miriam Blumenstiel. His gross estate, consisting entirely of personal property, amounted to approximately $100,000 and included over $80,000 cash in banks, a bond and mortgage in the sum of $10,000 executed by his brother Samuel and three promissory notes aggregating $8,750, made by nephews and nieces.

The testator bequeathed specific legacies aggregating $1,000 to his godchildren and gave his insurance moneys, his automobile and personal effects to his widow.    We find no inventory of the estate in the record, but it seems to be conceded that the value of the personal property bequeathed absolutely to the widow is in excess of $2,500.    The testator bequeathed the entire residue of his estate to the Central Trust Company of Rochester as trustee, to pay the income to the widow for life, then to the brothers and sister in equal shares.    Upon the death of the last surviving member of this group, three-fourths of the principal was bequeathed to the nephews Mervin and Monroe and the nieces Helen and Cora Adele, equally, unless some of them died prior to the time fixed for distribution.

leaving children, in which case their children took their share; or if there were no children, equally to the surviving nephews and nieces. The other fourth was bequeathed to two charitable institutions. There is no declaration in the will that the provisions in favor of the widow were made in lieu of all other claims against the estate.

In the spring and summer of 1934 negotiations were entered into between some of the next of kin of Alexander M. Blumenstiel and the charities, looking to a settlement of the claims of the latter under the will. An agreement was drawn up stating among other things that on the 25th day of May, 1934 (which was the date of the argument in court on the construction proceeding hereinafter alluded to) the terms of the proposed settlement were brought to the attention of all the parties interested in the estate. The agreement in substance provided that the charities were to receive one-eighth of the corpus of the estate instead of the one-fourth bequeathed to them. It was made subject to the approval of the surrogate. It was never signed by the widow.

On or about March 19, 1934, the brothers and sister of the testator filed a petition for construction of the will. In that proceeding the widow was not served with a citation. Nor did she waive service or appear personally in court or file a written notice of appearance. An attorney at law, Vincent J. Mulvey, filed a retainer and notice of appearance for her but his authority in writing to do so was never obtained or filed. There was thus a failure to comply with the provisions of sections 41 and 63 of the Surrogate's Court Act.

In the proceeding for the probate of the will Mulvey had appeared as attorney for the executors Central Trust Company and Cora Blumenstiel, and also for Cora Blumenstiel, individually. When the construction petition was filed Mrs. Blumenstiel was in Florida, but she was in Rochester on April sixteenth, which was the return day of the citation and she remained in the city thereafter until long after the decree was entered. On April sixteenth Mulvey consulted with her about estate matters. He says that in the course of the consultation he told her that the construction proceeding had been begun by the relatives of Mr. Blumenstiel for the purpose of distributing the estate of her husband at her death, instead of waiting until the death of all of the brothers and sister; that Mrs. Blumenstiel had nothing to worry about in connection with the proceeding because the ultimate result thereof would not affect her interest in the estate; that her life estate would not be affected; that so far as she was concerned it was simply a question of whether three-quarters of the residue would go to the nephews and nieces

or to the brothers and sister; that he would appear for her in the construction proceeding and make sure that her life estate was not affected. He further says that Mrs. Blumenstiel stated that she would leave the whole matter to him and Kitzel (an officer of the Central Trust Company) and that she was satisfied so long as she got the income.

Mulvey's version of this interview is denied in part by Mrs. Blumenstiel. She claims that neither in that interview nor at any later time did she authorize Mulvey to act for her in the construction proceeding; that if the proceeding was discussed, it was discussed very briefly; that she received no intimation that her interests might be adversely affected and was assured that no rights of hers were involved.

Mulvey states that he examined into the question of whether or not the widow would take a share in the corpus of the trust fund in the event that the corpus was declared to be intestate property, and came to the conclusion that in such an event she would not be entitled to any share therein. He is still firmly of that opinion.

The surrogate states in his first opinion that on the return day of the citation (April sixteenth) Mulvey was requested to procure the written authorization of Mrs. Blumenstiel to act for her and that he promised to do so. The decree recites that the citation was duly and personally served upon the widow and that she appeared individually and as executor by Vincent J. Mulvey, attorney. The surrogate and the respondents well knew that the widow had not been served, personally or otherwise, and that the notice of appearance of Mulvey was defective. Nevertheless the proceeding was closed and a final decree entered without bringing her within the jurisdiction. No copy of the decree was ever served upon her.

The surrogate held that the trust estates subsequent to the widow's life estate were invalid; that the remainders could not be accelerated, and that the testator died intestate as to the principal of the trust fund; that such principal vested as of the death of the testator in his next of kin subject to the life use of the widow; that such next of kin were Asher, Joseph, Samuel and Miriam Blumenstiel, brothers and sister of the deceased; that the widow had no interest in said principal except the life use thereof; that distribution of the remainder interests should be made among the persons entitled to the testator's personal property under the Statute of Distribution in force on April 6, 1933, the day of his death.

The surrogate indicates that he refused to open this decree upon two principal grounds, namely:

1. The widow is estopped from raising the jurisdictional question.
2. A rehearing would not change the result.

### I. THE ALLEGED ESTOPPEL.

The surrogate concedes that he never obtained initial or " threshold " jurisdiction of the widow, but that her conduct throughout the construction proceeding amounted to an estoppel from raising the question; that she actually retained an attorney and actually participated in the proceeding with full knowledge of the facts in such a way as to induce him to act in the premises in reliance thereon. In support of this view he refers to a number of facts and circumstances. He states that the widow knew of the oral family agreement to take care of the charities long before the argument in court, which occurred May 25, 1934. The said agreement was signed by some of the parties thereto at various days in the month of June. Mrs. Blumenstiel never signed it, individually or as executor. The Central Trust Company never signed it. We find nothing in the record to show that the widow knew of this oral family agreement prior to May twenty-fifth. Asher Blumenstiel says he informed her of the agreement on that day after the argument in court. Mrs. Blumenstiel denies this. She says that sometime after May twenty-fifth Kitzel told her that a settlement had been made with the charities and she inquired how that could be done without submitting the matter to her.

The surrogate states that after the decree had been made and brought to her knowledge she authorized her coexecutor to issue checks in payment of allowances made in the decree. But she was never told and did not know that the decree deprived her of whatever statutory interest she had in the intestate property of her husband. The surrogate states that a year after the construction decree was signed she verified the executors' final account, which is based upon the said decree. She, however, states that she signed the same before she had been advised of her rights in the construction proceeding. He also states that four months after the decree construing the will had been entered she signed an agreement discontinuing suits against some of the legatees. But here again, she acted without having been advised of her rights. The surrogate says that the widow allowed the decree to stand undisturbed for a year. But she says she was never informed of the scope of the decree until late September or early October, 1935. Her petition to reopen the decree is verified October 16, 1935.

A final ground of estoppel urged against the widow is that she consented to the entry of the decree. But consent must be based

upon knowledge of the facts, and this she did not have. She did not know that her interests were in any way involved. On the hearing her right to a share of the intestate property was not adequately presented. The surrogate said that counsel had argued almost exclusively on two points — the illegality and the non-acceleration. We quote from the surrogate's opinion:

" Comparatively little of the discussion was given to the possibility of the widow sharing in the intestate portion of the residuary corpus. Counsel, in their argument, briefly and in passing, stated [that] the widow could not so share; and the court was given to understand, on the argument, that the widow had said she was content with the life use. * * *

" In the ensuing decree the finding of intestacy was followed with a list of names of those who took distributive shares in the intestate portion of the residue, but the name of the widow was not set out in that list. This was quite in accord with the theory on which the petition was expressly framed, and also with the manner in which the matter had been argued and submitted, as aforesaid."

In other words, the surrogate understood and believed that in so far as the widow's rights to the intestate portion of the residue was concerned, he was entering a decree by consent of all the counsel interested, they having argued " briefly and in passing," that she could not share in such portion.

The facts and circumstances outlined by the surrogate are hardly the substance out of which estoppels are made. If the widow was not fully advised, or was incorrectly advised as to her rights, her alleged participation in the proceeding through Mulvey was not with full knowledge of the facts. Under such circumstances no estoppel resulted. As the surrogate himself said: " Had she been incorrectly advised as to her legal rights in respect of the will, she would be entitled to have the decree opened up."

This brings us to a discussion of the second reason given by the surrogate for his refusal to open the decree, viz., that a rehearing would not change the result.

## II.

In the construction proceeding the surrogate held that the specific legacies, and the life estate to the widow were valid; that the life estates to the brothers and sister were invalid as involving a possible suspension of ownership beyond the statutory period. He further held that the remainders could not be accelerated because they were contingent, in that the nephews must outlive the brothers and sister

and if any of the nephews should die before that event the share intended for them would go to their children. He held accordingly that the testator died intestate as to the corpus of his estate and as to all the intended life estates except that of the widow; that the corpus vested as of the date of the death of the testator in his next of kin, to wit, Asher, Joseph, Samuel and Miriam Blumenstiel and that the widow had no interest therein except her life use. As bearing upon the latter proposition it should be kept in mind that in the Blumenstiel will there is no declaration whatever that the provisions in favor of the widow were made in lieu of dower or other claims which she might have against the estate. Therefore, she was not put to an election by the testator to choose between such claims and the testamentary provisions.

Section 18 of the Decedent Estate Law was intended to increase the share of the surviving spouse in an estate either in a case of intestacy or where there was a will, by giving a right of election against testamentary provisions which the Legislature deemed inadequate — and the statute must be liberally construed to carry out such intention. (*Matter of Byrnes*, 260 N. Y. 465, 472.) However, if the testamentary provisions exceed the minimum requirements of the statute, there is no election, and the rights of the surviving spouse are not enlarged, except in a relatively minor point not material here. (§ 18, subd. 1, ¶¶ [b], [e].)

In the instant case the testator bequeathed to his widow far more than the minimum requirement of the statute. The outright legacies are in excess of $2,500 and the residue put into the trust exceeds twofold the value of the widow's intestate share had there been no will. Paragraph (d) of subdivision 1 of section 18 provides that where the will contains an absolute legacy of $2,500 or more and also a provision for a trust for the benefit of the widow for life of a principal equal to or more than the excess between the said legacy and her intestate share, no right of election whatever shall exist in her.

It seems clear, therefore, that the widow had no right of election and no duty to elect, either under the will or under section 18. Neither the testator nor the law gave her any choice of action. If, then, the testator had validly bequeathed his entire estate, the widow could claim nothing except the portion specifically bequeathed to her. But the will, so the surrogate has held, failed to validly bequeath a considerable portion of the estate. It is as if, after the valid bequests to the godchildren and the widow, he had bequeathed the rest of his property to the Emperor of France. Under such circumstances it would seem that she took both the testamentary provisions and her share of the intestate property; the former

because the testator gave them to her and the latter because the law gave it to her. What the testator bequeathed to her is hers by virtue of the testamentary act. What he failed to bequeath to anybody is hers by virtue of the statute (Dec. Est. Law, § 83, subd. 4) to the extent authorized thereby. The widow had neither a right nor a duty to elect. " Election is the choice between two alternative and inconsistent rights " (*Matter of Hills*, 264 N. Y. 349, 355), and the rights of the widow under the will and under the statute are neither alternative nor inconsistent. Inasmuch as she was neither obliged nor permitted to make a choice, she cannot, it would seem, be charged with having done so or penalized for failure to do so.

The surrogate, construing section 18, correctly states that the testamentary election lies against a will only in so far as it conveys the estate to others than the surviving spouse in derogation either of the spouse's intestate share or of the statutory equivalents therefor; that the will set up one of the said statutory alternatives; and that if she declined to accept the said alternative she could not legally choose to take her intestate share instead. This is so because section 18, subdivision 1, paragraph (d), expressly provides that under such circumstances no right of election whatever shall exist in the surviving spouse.

The surrogate then concluded that if the widow declined the only provision which she could accept she would disinherit herself, " even if the testator died intestate as to the rest of his estate." No authority is cited in support of this conclusion and we regard it as contrary to the law and the weight of authority. The rule with respect to the distribution of intestate property is set forth in section 83 of the Decedent Estate Law, which provides that the surplus of the personal property of a deceased person, after payment of debts and legacies, if not bequeathed, shall be distributed to the surviving spouse, children or next of kin or other persons, in certain proportions. Applying section 18, subdivision 1, paragraph (d), and section 83, subdivision 4, to the facts of this case, it would seem to follow that if the testator had bequeathed to his wife her intestate share or its statutory equivalent, and had validly bequeathed the entire balance of his estate to others, the widow would have no right of election, and would be obliged to take the testamentary provisions or disinherit herself. If the testator bequeathed to his wife her intestate share or its statutory equivalent and failed to bequeath the residue of his property, there would still be no election. The widow would take the legacy under the will, and her share of the unbequeathed residue under section 83. In *Matter of Durand* (250 N. Y. 45, 55) the court, speaking of intestate property, said: " The courts

must leave it as if there were no will. No power of revision of wills is intrusted to the courts. In the absence of a disposition by will, the statute, not the court, provides for the disposition of the estate."

It is argued, and it is the fact, that the testator clearly intended to exclude the widow from sharing in the corpus. But the testator's intention, if not expressed according to law, does not change the above rule. (*Low* v. *Bankers Trust Co.*, 270 N. Y. 143, 152.)

It would seem that the surrogate overlooked the important point that the widow takes unbequeathed property solely by virtue of section 83, and wholly irrespective of section 18. She does not " elect " or " choose " to take the intestate property at all. It is hers without any election by virtue of the statute (*Matter of Durand*, *supra*), unless the testator has provided that the provisions in the will are in lieu of all other claims against the estate.

Where the will declares that the provisions in favor of a wife are made in lieu of dower and all other claims which she may have against the estate, if she accepts such provisions, she is barred from claiming any portion of the estate except the testamentary provisions. (*Matter of Benson*, 96 N. Y. 499; *Chamberlain* v. *Chamberlain*, 43 id. 424, 446; *Matter of Hodgman*, 140 id. 421; *Matter of Silsby*, 229 id. 396.)

In the latter case the court said (p. 404): " The widow of the testator having consented to accept the provisions of the will in lieu of dower and other interests in the testator's estate, is not entitled to share in the distribution of the [intestate] trust fund."

The obvious inference from this statement is that Mrs. Blumenstiel not having accepted the provisions of the will in lieu of dower and other interests in her husband's estate, is entitled to her share under the statute.

In *Matter of Hills* (264 N. Y. 349) the will directed that the entire income from the residuary estate be applied to the support of the widow, an incompetent person. It gave more than half of the estate to a charitable corporation, in violation of section 17 of the Decedent Estate Law. The will directed that the provisions for the wife were in lieu of dower and of all other claims on the estate. The Court of Appeals remitted the proceedings to the Surrogate's Court with a direction that the Supreme Court must elect for the incompetent widow whether she should accept the testamentary provisions, or reject the same and assert the invalidity of the charitable bequest. The Supreme Court accordingly directed rejection of the testamentary provisions. (157 Misc. 109; N. Y. L. J. Dec. 6, 1934, p. 2215; affd., 244 App. Div. 719; leave to appeal to Court of Appeals denied, Id. 786; 268 N. Y. 725.)

In *Matter of Hayman* (136 Misc. 199; 137 id. 329; affd., 229 App.

Div. 853; 256 N. Y. 557) the testator directed that the provisions of the will in favor of the widow were made, not in lieu of all claims against the estate, but in lieu of dower only. It was held that she did not forfeit all other rights in her husband's estate by electing to take such provisions.

In *Matter of Skillman* (247 App. Div. 327) there was (as here) no provision whatever requiring the widow to choose between the testamentary provisions and other claims she might have against the estate, and it was held that she took both the income of the trust fund under the will, and her share of the intestate property under subdivision 4 of section 83 of the Statute of Distributions. I see no distinction between the *Hayman* and *Skillman* cases and the case at bar.

The only case cited by the surrogate in support of his decision is *Matter of Rich* (149 Misc. 843; affd., without opinion, 242 App. Div. 613). There the entire estate was validly disposed of. The will created a trust fund for life in the husband in the principal sum of $40,000, which was one-half of the estate. The court held that this bequest prevented him from electing to take his intestate share outright, pursuant to section 18, but that he had a limited right under paragraph (b) of subdivision 1 of that section to withdraw $2,500 in cash from the principal of the trust. The will (paragraph eleven) provided that the provisions in favor of the husband were made and should be accepted by him in lieu of any other interest in her estate given to him by law or statute; and if he should accept, or elect to take, such interest, then the testamentary provisions in his favor should be of no force and effect. The court, construing the will as a whole, held that the above provision did not evidence an intent of the testatrix to permit him to withdraw outright his entire intestate share of one-half of the estate; that her clear intent and purpose were to limit her husband to the income of one-half of her estate, subject to his right to withdraw the relatively small amount of $2,500 from the principal fund; that the provision in question " was a limitation upon his rights in the estate. It was not an enlargement of his right of election which would afford him the opportunity to take his intestate share outright, where the statute gave him no such right. * * *

" The testatrix provided for her husband to the full extent of his statutory rights. He is entitled to the payment of the withdrawable amount under his limited right of election. The will is otherwise immune from attack by him, and the remaining provisions of the trust for his benefit must stand, not because of the provisions of section 18 of the Decedent Estate Law, but because of the dominant expression of intent by the testatrix " (p. 846).

That case holds simply:

(1) That the husband had no right of election under section 18 (except the limited right to withdraw in cash from the principal of his trust fund the relatively small amount of $2,500).

(2) That he had no right to withdraw his intestate share under paragraph eleven, for the will, read in its entirety, evidenced a contrary intent. The case is, therefore, not an authority for the proposition that the widow in the instant case has no right or interest in the intestate property of her husband.

All of the attorneys in their briefs seem to concede that the valid parts of the will can be separated from those that are invalid without defeating the general intent of the testator to the extent of the valid parts (*Matter of Hitchcock*, 222 N. Y. 57, 73; *Matter of Silsby*, 229 id. 396, 403); and that the bequests to the godchildren and the widow are valid. There also appears to be general agreement that the successive life estates to the brothers and sister are invalid as involving a possible unlawful suspension of ownership beyond the statutory limit of two lives. We concur in the view of the surrogate that the life estates to the brothers and sister are invalid; that the remainders to the nephews and nieces cannot be accelerated (See *Matter of Silsby, supra*), and that the testator died intestate as to the portion of the corpus bequeathed to them. The surrogate did not consider the validity of the bequest of the remaining one-fourth to the charities so that question remains entirely open. The stipulation giving to the charities one-eighth of the residuary estate in lieu of their claims under the will is invalid, the widow not having signed it. The decree as to the charities was entered upon the mistaken assumption that all parties consented to it. In fact, the entire decree seems to have been entered upon the same mistaken assumption.

No appeal is pending from the decree and the questions are not here as to whether the life estates to the brothers and sister and the remainders to the nephews, nieces and charities are valid. The sole question now under consideration is whether a rehearing of the construction proceeding might change the result. Enough has been said to show that the widow has at least an arguable claim to her share of the intestate corpus, if there is in fact an intestate corpus, and that that claim was never properly presented to the court.

If these views are correct, the entire decree should be set aside and a new hearing held at which all interested parties must be cited unless they duly appear, present their claims and be bound by the result. We have the power to grant a new hearing (Surr. Ct. Act, §§ 40, 309) if we find " sufficient cause " (Surr. Ct. Act, § 20, subd. 6) of any kind. We are not confined as to " cause " to " fraud, newly

discovered evidence, clerical error," mentioned in section 20. (*Matter of Fuller*, 227 App. Div. 801; affd., 254 N. Y. 519. See, also, *Matter of Droney*, 231 App. Div. 674.) *United States* v. *Guaranty Trust Co. of N. Y.* (76 F. [2d] 747) is not an authority for respondents. There the United States was not a necessary party to the proceeding but intervened voluntarily to set up a collateral claim.

We desire to make it clear that we have thus construed this will in view of the construction adopted by the learned surrogate. Upon a new hearing other and different considerations may come to mind which will require a construction different from that indicated in this opinion.

The order should be reversed on the law and facts, with ten dollars costs and disbursements, and motion granted, without costs.

All concur. Present — SEARS, P. J., TAYLOR, THOMPSON, CROSBY and LEWIS, JJ.

Order reversed on the law and facts, with ten dollars costs and disbursements, and motion granted, without costs.