In the Matter of the Probate of the Will of PAULINE S. WESTON, Deceased. SYDNEY WESTON, Respondent; DAPHNE STERLING et al., Appellants.

First Department, February 20, 1962.

*Daniel J. Madigan* of counsel (*Burton B. Turkus,* attorney), for appellants.

*Benjamin Heller* of counsel (*Leonard H. Bernstein* with him on the brief; *Harry H. Lipsig,* attorney), for respondent.

MEMORANDUM BY THE COURT. It appeared on the trial that the proponent was the husband of the testatrix. The latter had been a widow with two grown daughters. She was wealthy. The marital career was most extraordinary. These parties were twice divorced and twice remarried in the space of two years. Before the first marriage, proponent signed an antenuptial agreement stating that he was marrying for love alone and waiving all claims that survival would give him to his wife's estate. The third and last marriage was contracted a few months prior to the testatrix' demise and at a time when she was suffering from an advanced stage of cancer, which condition was obvious and known to proponent. Less than one month prior to this last marriage, the antenuptial agreement was revoked with due formality. The will was prepared about three months later, and one month after execution she was dead. The will revoked a prior will of which the daughters were beneficiaries. Deceased's estate consists largely of realty. A superficial reading would give the impression that the proponent and the daughters fared about equally in the distribution. Actually, the property left to proponent was paid for by the deceased by a bank loan in lieu of a mortgage. The loan remains a debt of the estate and proponent will receive the property unincumbered. The residual of the estate, in which the daughters and proponent share equally, will largely go to repayment of this loan, so that the daughters' share of the residual will be devoted to the payment for proponent's bequest. The only issues on the trial were fraud and undue influence. We agree that these facts alone show neither. Nor does the record reveal anything unprofes-

sional in the conduct of the attorneys who drew the will and saw to its execution. We do feel, however, that the background of the relationship which gave rise to the will was inadequately explored. If there was fraud or undue influence, it had its roots not in procuring the revocation of the antenuptial agreement and the execution of the will. In all probability, if it exists it is to be discovered in events antedating the final acts. The facts in regard to the rapidly recurring marriages and divorces and the facts in connection with the testatrix' purchase of the real estate left to proponent — a deal which he arranged — are fields in which the answers to this extraordinary relationship are to be found. We do not know what such investigation will uncover, but we do feel that allowing this will to go to probate without such investigation could result in irremediable injustice. This action is taken pursuant to the authority granted this court by section 309 of the Surrogate's Court Act, which allows a determination *de novo* as to all matters (*Matter of Dunn,* 261 App. Div. 1040, affd. 287 N. Y. 821). '' We have the power to grant a new hearing (Surr. Ct. Act, §§ 40, 309) if we find ' sufficient cause ' (Surr. Ct. Act, § 20, subd. 6) of any kind. We are not confined as to ' cause ' to 'fraud, newly discovered evidence, clerical error,' mentioned in section 20.'' (*Matter of Blumenstiel,* 248 App. Div. 533, 544–545; see, also, *Matter of Falvey,* 7 A D 2d 476.) The right to reopen or modify a decree in the interest of justice is not open to question (*Matter of Fuller,* 227 App. Div. 801, affd. 254 N. Y. 519; *Matter of Pratt,* 233 App. Div. 200, 207). In effect we are remitting because significant matters are not presented. This is a recognized power. (*Matter of Teed,* 59 Hun 63; 5 Warren's Heaton, Surrogates' Courts [6th ed.], § 452, par. 6 [c], p. 60.)

STEVENS, J. (dissenting). I dissent and vote to affirm. The only issues upon which submission was requested, but upon which the Surrogate directed a verdict, were the issues of fraud and undue influence. The withdrawal of the other objections amounted to a concession that the document proffered was the last will and testament of decedent; that she had the requisite testamentary capacity, and that the document was executed voluntarily and in accordance with statutory requirements.

We are agreed that the record does not support the charge of fraud and undue influence. The majority, feeling that further exploration of the background of relationship between proponent and the testatrix might provide fertile soil for continued action, culminating in a different result, reverses on the law, on the facts and in the interests of justice, and orders a new trial.

Section 309 of the Surrogate's Court Act is explicit that

" [t]he appellate court may reverse, affirm, or modify, the decree or order appealed from * * * and it may, if necessary or proper, grant a new trial or hearing. Upon an appeal from a determination of the surrogate, made upon an application pursuant to subdivision six of section twenty, the appellate court has the same power as the surrogate, and his determination must be reviewed as if an original application were made to that court." (See, also, *Matter of Falvey,* 7 A D 2d 476.) Under subdivision 6 of section 20 of the Surrogate's Court Act, the Surrogate has power to open, vacate, modify or set aside or to enter as of a former time, a decree or order of his court. He may grant " a new trial or a new hearing for fraud, newly discovered evidence, clerical error or other sufficient cause." Such powers are limited in their exercise to that of a court of general jurisdiction in a like case.

Upon this record fraud and undue influence have been ruled out. Newly discovered evidence or clerical error are not claimed. The determination then must be whether in the exercise of judicial discretion " sufficient cause " exists to make a new trial " necessary or proper " or whether the interests of justice demand it.

" Judicial discretion is well defined in *Tripp* v. *Cook* (26 Wend. [143], 152) as follows: ' Judicial discretion is a phrase of great latitude; but it never means the arbitrary will of the judge. It is always (as Chief Justice MARSHALL defined it) " a legal discretion to be exercised in discerning the course prescribed by law; when that is discerned, it is the duty of courts to follow it. It is to be exercised, not to give effect to the will of the judge, but to that of the law." ' " (*McGurty* v. *Delaware, Lackawanna & Western R. R. Co.,* 172 App. Div. 46, 47.)

Concededly the phrase " sufficient cause " is elastic, and the terms " necessary " or " proper " flexible. However, there are certain judicial guide lines which might profitably be reviewed before any analysis is made of the facts in this case as set forth in the record before us.

It was pointed out in the *Fuller* case (*Matter of Fuller,* 227 App. Div. 801, affd. 254 N. Y. 519), that the Surrogate, under subdivision 6 of section 20 is vested with jurisdiction " to vacate or modify a decree *only* in respect to the things specified in the statute and for causes of like nature ". And the court further observed " the right to reopen or modify in the interests of justice is not open to question." (See, also, *Matter of Blumenstiel,* 248 App. Div. 533.) That observation is not to be construed as having been made *in vacuo.* Facts must be shown, however, to justify the exercise of our discretionary power.

In the *Fuller* case, appellant acted upon advice of counsel, in ignorance of his rights, to his substantial financial detriment in giving up a fund to which he was entitled. In *Matter of Blumenstiel* (*supra*) the Surrogate "never obtained initial or threshold jurisdiction of the widow" (p. 538), the one whose rights were intimately affected. Those matters were revealed by the record. In the case before us remission is made because of matters which do not appear in the record, and there is no guarantee nor even reasonable assurance such matters exist.

While the question of "other sufficient cause" is addressed to the judicial discretion (*Matter of Townsend,* 215 N. Y. 442, 447), that phrase as used in subdivision 6 of section 20, has been construed to mean "causes of like nature with those specifically named. The maxim '*noscitur a sociis*' applies, and limits the signification of the general phrase." (*Matter of Tilden,* 98 N. Y. 434, 442. See, also, *Matter of Putnam* (220 App. Div. 34) as to the extent of and limitations upon the powers of the Surrogate under subdivision 6 of section 20 of the Surrogate's Court Act. If the error be one of law the remedy is by appeal. (*Matter of Putnam, supra*; *Matter of Brennan,* 251 N. Y. 39.) It would seem, where the appellate court does not find error of law, does not find new or different facts from those appearing in the record which already have been weighed and litigated, that a mere feeling of probabilities is not the "sufficient cause" to which the statute refers, warranting the exercise of judicial discretion.

The decedent, from the record, was a capable, intelligent business woman of strong will. The instrument offered and admitted to probate was drawn, according to the record, by eminent counsel. An exhibit in the case, a letter dated April 10, 1960, in the handwriting of decedent, written to her attorney some 10 or 11 days after the execution of the will, expresses her satisfaction with the will. It points out also that decedent "had previously made ample provision for these girls" (her daughters), the contestants herein.

Examination of the will reveals a gift to decedent's church and a distribution to persons who might naturally be the objects of her bounty. In my view, in light of the record, the totals are not so disproportionate as to render suspect the scheme of distribution, or lead one to conclude that a gross injustice has been done.

While this court has plenary power to reverse the decree (*Matter of Randall,* 202 App. Div. 860, action taken under former section 2763 of the Code of Civil Procedure, now section 309 of the Surrogate's Court Act) as justice requires (*Matter*

*of Tangerman,* 226 App. Div. 162), the cases cited and the terms "necessary" and "proper" in the context used (Surrogate's Ct. Act, § 309) import some evaluative determination preliminary to the exercise of the judicial discretion. This in turn requires the existence of factual data of some substance warranting such determination, for the exercise of discretion implies conscientious judgment. In my view such data is lacking.

Since there was a directed verdict the evidence must be viewed in a light most favorable to the appellants. Even such a stringent test fails to reveal facts which, guided by law, warrant the exercise of a discretionary judicial judgment. The parties were represented by able counsel and have had their full day in court. A speculation or conjecture of impropriety, born of the numerous marriages and divorces between the testatrix and her husband, and the revocation of the antenuptial agreement under the circumstances testified to, is not that data of substance which fires the conscience or outrages the sense of justice so that we must or even may reasonably conclude there has been a grave injustice done. Without such proof of manifest inequity requiring or warranting judicial intervention I dissent and vote to affirm.

BREITEL, J. P., RABIN, McNALLY and STEUER, JJ., concur in Memorandum; STEVENS, J., dissents in opinion.

Decree directing probate entered upon a directed verdict reversed, on the facts and the law and in the interests of justice and a new trial ordered, with costs to abide the event. Settle order on notice.