In the Matter of the Estate of THOMAS LEAHY, Deceased.

Surrogate's Court, Monroe County, February 8, 1945.

*Nathaniel L. Goldstein, Attorney-General (R. Lloyd Sand-holzer* of counsel), for petitioner.

*Oswald P. Backus* for trustee.

FEELY, S. Testator, in creating a testamentary trust for the benefit of his daughter, Mary J. Payne, made manifest his knowledge that she was then incompetent by his statement in the will that he intended the income of the trust should be expended for her care and benefit during her life, " if she is unfitted to receive it and use it for her best interests ". He died in 1926. This daughter has been a patient in the Rochester State Hospital since 1930.

Upon the petition of the hospital in 1944, the trustee filed his account, which shows the assets consist of an equity in a house and lot, and some mortgages of little or no value. It also shows that beginning in 1937, shortly after letters of trusteeship issued, the trustee began a series of payments to individuals at odd intervals for maintenance and clothing of Mary J. Payne, and continued to do so until October of 1943.

In its petition the hospital is described as interested in the estate of the decedent for reimbursement of moneys expended for the care and treatment of Mary J. Payne, which pursuant to the trust clause in said decedent's will, is alleged to be a charge upon said estate. The trustee thereupon not only filed his account as such, but also brought in as parties in the accounting proceeding all persons interested in the estate, including in the list the claimant hospital for its claim for $2,361.99 for care and treatment of said patient. This left no ground for the objection to the status of this claimant in the accounting proceeding. The objectant stressed mainly his contention that the petitioner could not now ask the court to construe the will in reference to whether or not the testator intended the trustee should pay the income to the hospital. The objection is based on the claim that the statutes do not expressly permit a " creditor " either to compel a trustee to account, or to ask that the will be construed. The present case is unusual in that the petitioner alleges that the will indicates the testator intended the trust income to be used for the daughter expressly because she was, or was likely to become incompetent.

While it is true, as a general rule, that no " creditor " of a legatee, nor even of the testator, comes within the definition of that term (Surrogate's Ct. Act, § 314, subd. 10), as one of the persons " interested " in the fund, as the basis on which to petition for compulsory accounting by a trustee can be asked for (Surrogate's Ct. Act, § 259, subd. 3), still the trustee in filing his account on the petition of the claimant, and bringing in all other parties in interest, was estopped to question the status of the petitioner to compel the accounting. The petitioner had gone further by alleging the testator intended such a claim as that of the hospital should be a charge upon this trust estate. Here again the objector seems to be relying mainly on the general rule, without regard to the unique feature of this trust provision · insofar as it refers to the incompetence of the life beneficiary. As a general rule, a creditor of testator, or of his executor for administration expenses, cannot ask that the will be construed, presumably on the theory that such obligations must first be paid

in every case, regardless of what disposition the will makes of the net estate, other than a charge upon land or other property, or where the claimant has some collateral security that is not yet liquidated. Section 145 of the Surrogate's Court Act describes the petitioner who may ask the will be construed as " any person interested in obtaining a determination as to the validity, construction or effect of any disposition of property contained in a will ". This wording is broader than the phrase, " persons interested " in the fund. Section 145 is not the only source of the surrogate's power to construe a will. In the enumeration of cases in which the broad equity powers of the surrogate may be exercised, subdivision 8 of section 40 of the Surrogate's Court Act declares the surrogate may construe a will " whenever it is necessary to make such determination * * * in a proceeding pending before him ". Since 1933 (ch. 642) section 145 has expressly carried the declaratory provision that if on a trustee's accounting " any question is presented respecting the propriety of any debit or credit in such account, the determination of which involves a construction of any portion of the will, the presentation thereof shall have the same effect as if the petition had expressly requested a construction of the particular portion of the will involved in such determination." This was merely declaratory of the power, that had been recognized as inherent in the surrogate's authority long before the revision of 1914, to ascertain what the testator intended in his will before the court attempted to effectuate it by distribution or disbursement; or in other words, to make sure of the pattern before cutting the cloth. In the present case there is an allegation in the petition connecting this trust income with this incompetent's support. The account claims credit for payments of income to individuals for the maintenance and clothing of said Mary J. Payne, the trust beneficiary, so that in the peculiar circumstances of this case it appears to be in order for the hospital that has cared for this beneficiary for these last fourteen years to present the question, based on its allegation, whether or not the will indicates the testator intended by it that the trustee should pay the income from this trust to this hospital. The omission to make such payments is involved as well as the credits claimed for payments to others for the support of the incompetent.

On notice, enter an order in accord with this decision and also setting the matter down for hearing or other disposition on the adjourned calendar for Friday, February 16, 1945.