In the Matter of the Construction of the Will of CHARLES HAYDEN, Deceased.

Surrogate's Court, New York County, October 3, 1950.

*William M. Parke, George W. Whiteside, Charles Pickett, Jule E. Stocker* and *Francis E. Koch* for Charles Hayden Foundation, individually and as a limited partner in the copartnership of Hayden, Stone & Co., and others, for motion.

*Nathaniel L. Goldstein, Attorney-General* (*Corning G. McKennee* of counsel), in his statutory capacity under section 12 of Personal Property Law and section 113 of Real Property Law, for motion.

*John W. Davis, Walter D. Fletcher, Robert Gerstenlauer* and *John N. Irwin II,* for Sarah Abrams and others, petitioners, opposed.

*William Fitz Gibbon* and *Mark P. Stumpf* for Herbert G. Bell and others, individually and as copartners of Hayden, Stone & Co., and another, opposed.

COLLINS, S.   One hundred thirty-one employees of decedent and one retired employee have instituted a proceeding for the construction of his will and a determination that his personal representatives and the trustees of Charles Hayden Foundation have the power and authority, and are under a duty, to create a pension fund for the benefit of veteran employees of Hayden, Stone & Co.   The personal representatives of the decedent and the foundation have moved to dismiss the petition on the ground that petitioners have no status to maintain the proceeding and on the further ground that the construction, determination and instructions sought by the petition relate to matters which are academic, abstract and moot.   The Attorney-General of the State of New York, representing indefinite charity beneficiaries under the will (Personal Property Law, § 12, subd. 3), also moves to dismiss the petition on the ground that the petitioners are without status to invoke the jurisdiction of the court in such a proceeding.

Section 145 of the Surrogate's Court Act provides that an executor, an administrator, *c.t.a.,* a trustee, or " any person interested in obtaining a determination as to the validity, construction or effect of any disposition of property contained in a will " may present to the court a petition " setting forth the facts which show his interest   *   *   *   and the particular portion of such will concerning which he requests the determination

of the court." The preliminary question, therefore, is whether the petition sets forth sufficient facts to show that petitioners are persons " interested in obtaining a determination as to the validity, construction or effect of any disposition of property " contained in the will of this decedent.

The text of section 145 of the Surrogate's Court Act appeared in its present form in the revision of 1914 (L. 1914, ch. 443; see Code Civ. Pro., § 2615). Prior to that time there had " been no definite jurisdiction to construe wills, except where necessary to the determination of a pending issue. Therefore, it was necessary to resort to a supreme court action. Now such a proceeding may be instituted in surrogate's court." (Revisers' Notes, p. 40, proposed Code Civ. Pro., § 2510.) In granting general jurisdiction to construe a will in a special proceeding for that purpose, the Legislature was required to add new text relating to the new special proceeding. The text adopted by the Legislature extended the remedy to " any person interested " in obtaining such a determination. The Revisers' Notes do not attempt to define the terms or to prescribe the nature and quality of the interest necessary to support the right to request a construction. The " expression, ' person interested ', *where it is used in connection with an estate or a fund* ", had theretofore been defined as including " every person entitled, either absolutely or contingently, to share in the estate or the proceeds thereof, or in the fund, as husband, wife, legatee, next of kin, heir, devisee, assignee, grantee, or otherwise, except as a creditor." (Code Civ. Pro., § 2514, subd. 11, as amd. by L. 1880, ch. 178; emphasis added. Now Surrogate's Ct. Act, § 314, subd. 10.) It has been said, however, that the expression used in section 145 " is broader than the phrase, ' persons interested ' in the fund " (*Matter of Leahy*, 184 Misc. 250, 252, FEELY, S.) for the reason that section 145 requires only that a person have an interest " in obtaining a determination ", while section 314 prescribes an actual interest in the fund itself. The text of the statute as enacted in 1914 and the absence of a more detailed explanatory note become readily understandable in the light of the settled practice theretofore.

Prior to 1914 the Surrogate had specific authority to construe a will in a probate proceeding whenever a party " expressly puts in issue " the question of construction (Code Civ. Pro., § 2624). The Supreme Court had general jurisdiction of an action to construe a will (Code Civ. Pro., §§ 1862, 1866; *Mellen* v. *Mellen*, 139 N. Y. 210, 217, 218). The rule was well settled that under such general or special jurisdiction no person " can

impeach the validity of the disposition of property by will, unless the contestant, if successful, will acquire some interest under the statutes of descent and distribution, or as devisee or legatee, in the property attempted to be disposed of by the will ''. (*Trustees of Amherst Col.* v. *Ritch,* 91 Hun 509, 532, affd. 151 N. Y. 282.) In *Jones* v. *Hamersley* (4 Dem. 427, 435) it was held that '' no person can command the exercise of such jurisdiction, unless under the will whose provisions he seeks to have interpreted, he claims some interest in the personal estate bequeathed, or unless, on the other hand, he claims that because of the invalidity of the testator's disposition of such personalty or of some portion thereof, he is entitled to share in the same under the statute of distributions; and 2nd. That an occasion does not arise for the exercise of the power conferred by § 2624 unless, in accordance with the course and practice of the Supreme court, that tribunal would, under similar circumstances, exercise its jurisdiction.'' See, also, *Matter of Campbell,* 88 Hun 374, 377; *Matter of Davis,* 105 App. Div. 221, 224, and *Wager* v. *Wager,* 89 N. Y. 161, 166.)

It seems, therefore, that the expression '' any person interested in obtaining a determination '' as to the construction of the will, was intended to mean any person who claims an interest under the will as legatee or who claims an interest in the property as distributee because of the alleged invalidity of an attempted disposition by will. The statute also requires that the petition set forth '' the facts which show his interest ''. A mere claim of interest without facts to support the claim is not sufficient. A claim that is on its face frivolous will not entitle one to invoke the jurisdiction of the court. On the other hand, it is not required that the petition establish conclusively that petitioners must ultimately and inevitably be successful on the construction. It is enough if they claim to be beneficiaries under their construction of the will, and if they set forth in their petition facts which show their claimed interest as beneficiaries. The petition, of course, is open to preliminary challenge on the ground that it fails to set forth facts showing their interest, but on the determination of the preliminary motion all of the facts set forth in the petition must be assumed to be true. When petitioners claim that the ultimate facts alleged in the petition will be established by competent extrinsic evidence, the court must accept the allegation. It cannot reject evidence which has not yet been offered except, perhaps, on the ground that no extrinsic evidence of any kind would be admissible.

Petitioners do not claim to be expressly named in the will. They claim an interest under the sixth article of the will which deals with " Copartnership Affairs." It is unnecessary here to quote the entire text of that article. The first paragraph authorizes the fiduciaries or the trustees of the foundation (which is the principal legatee under the will) to allow principal of the estate, not exceeding $5,000,000, to remain in the firm of Hayden, Stone & Co., as limited or special capital, during a period not to exceed fifteen years, or to loan the firm such an amount over that period of time. The second paragraph empowers them to grant the use of the firm name to the surviving members of the firm and the third paragraph authorizes them to perform such acts as may be required by the rules of the stock exchange. The article then reads: " I authorize and empower my said Executors and Trustees and/or the directors or trustees of said Foundation in their uncontrolled discretion, and as they may deem advisable, to carry out any and all contracts or agreements which I have entered individually, or as a member of said firm of Hayden, Stone & Co., in the underwriting, purchase or sale of securities of any and every nature or kind, and to execute and deliver and endorse, without order, permission or decree of any court, all instruments, certificates of stock, registered bonds or other evidences of indebtedness that they may deem necessary at the risk of my estate and the several trusts hereby or by any codicil created, including said Foundation; and all of the *obligations* of the *firm* existing at the date of my decease may be met and discharged in the ordinary course of business as though I were still living but only as my said Executors and Trustees or as the directors or trustees, as the case may be, of said Foundation or Corporation, in their uncontrolled discretion may deem advisable. I wish, if possible, that my decease shall in no way or manner cause any interruption in the conduct of *said firm's business,* and my Executors and Trustees and the directors and/or trustees of said Foundation or Corporation are hereby authorized and empowered to cooperate with the surviving members in the firm and adopt any and all means which shall seem advisable and effective to my Executors and Trustees or the directors or trustees of said Foundation or Corporation to accomplish this intention, and to carry out all the terms and conditions of this Article, and the fact that they so act shall be conclusive evidence of the due and proper exercise of such discretion, and they shall be exempt from any and all personal liability therefor, and I hereby release and discharge my said Executors and Trustees and the directors and/or trustees of

said Foundation or Corporation from any and all risks incurred, as well as from all losses that may be sustained as a result thereof and from all action taken under or pursuant to this Article, except bad faith.'' (Emphasis added.)

The petition alleges that when the decedent died on January 8, 1937, he was the sole owner of the business conducted under the name of Hayden, Stone & Co., and the sole owner of all of its assets. The business was conducted under an agreement dated December 1, 1933, which is referred to in the briefs but which is not before the court in this proceeding. It is also alleged that during his lifetime the decedent declared that his employees were his family, and that it was one of the dominant purposes of the decedent that the firm should continue in business after his death as a monument to his memory and as a benefit to his partners and employees. Petitioners state that it has heretofore been held in a proceeding in this court that the testator's expression of purpose in article sixth of his will " undoubtedly was designed as far as reasonably possible to help the numerous veteran employees of the firm in a continuing tenure of position ''. They allege that it was the decedent's invariable practice to provide adequate retirement benefits to his employees and that it was his intent in article sixth not only to grant full discretion to the fiduciaries to provide adequate retirement benefits to veteran employees but to make it a duty so to do.

Petitioners point out certain so-called latent ambiguities in the will, which, they say, when read in the light of the surrounding circumstances, reveal the purpose and intent claimed by them. The words " obligations of the firm " as used in article sixth, are said to mean something more than strict legal liabilities. The expression " the firm " is claimed to refer to employees as well as associates. It is argued that since decedent was the sole owner of the business, all in the firm, except the decedent, were employees. Moreover, petitioners say, all legal liabilities of the firm were legal liabilities of the decedent and he could not have attempted to grant a discretion to his fiduciaries to meet and discharge only legal and binding obligations. They argue that the light of pertinent surrounding circumstances will reveal them as a class of beneficiaries intended to be described in the will and that the fiduciaries are obliged to make some effort to carry out the decedent's revealed intent.

Petitioners claim, moreover, that it is *res judicata* that petitioners are interested in the estate and are entitled to a construction of the will. The decree which is claimed to have estopped the other parties is not before the court on this motion.

It is claimed also that the fiduciaries and the foundation are estopped by prior conduct from challenging the interest of petitioners. Here, too, there is mere argument without opportunity to submit formal proof.

It might be said that petitioners' contentions seek to expand the will beyond permissible limits rather than to reveal its true meaning by competent extrinsic evidence. It may well eventuate that competent evidence of surrounding circumstances will reveal no latent ambiguities in the will, and will wholly fail to identify petitioners as intended beneficiaries. However, the difficulty with the present position of the moving parties is that it would require the court preliminarily to construe the will without giving petitioners any opportunity to offer evidence of surrounding circumstances or it would require the court to rule in advance that evidence referred to on the argument either will be wholly inadmissible if offered, or will not sustain petitioners' allegations if received. On the argument, reference is made to agreements or documents, without production of the instruments. Conflicting inferences may be made as to what they would show if offered and received in evidence. Under such circumstances the record is not sufficient to permit the court to make a definitive construction without a formal hearing.

Petitioners make it clear that they do not contend that the will merely authorizes the fiduciaries to expend funds for the benefit of an unidentified class of persons among whom petitioners could be numbered if the fiduciaries choose to designate them. They concede that in such circumstances they would have no standing to demand a construction of the will because their interest in such event would arise only when they were selected by the fiduciaries. (*Matter of Pulitzer,* 140 Misc. 572, affd. 237 App. Div. 808; *Matter of Jones,* 191 Misc. 617, 619.) They maintain that they are members of a class readily identifiable by reference to the decedent's business records, and that a proper interpretation of the will includes them as beneficiaries.

Nothing that is here said is to be construed as indicating any view of the court respecting the ultimate construction of the will or the competency or admissibility of any evidence that might be offered. All that the court now holds is that petitioners claim that they have an interest under the will, that they contend that the will requires extrinsic evidence in order to make apparent the ambiguity and their intended benefits, and that, on the basis of the allegations in their petition, they are entitled to their day in court.

The fiduciaries also contend that even if the will be construed as authorizing the setting up of retirement benefits for veteran employees of the decedent, it would be a matter within the discretion of the trustees and since they have not determined to exercise such discretion, the question is merely an academic one. Petitioners claim, however, that the will imposes a duty upon the trustees to provide adequate benefits and they ask that it be so construed.

The motions to dismiss the petition are, therefore, denied at this time without prejudice to a renewal upon the hearing, and the matter is placed on my calendar for hearing on the 12th day of December, 1950, at 2:30 P.M.