In the Matter of the Construction of the Will of ALVERETTA FALVEY, Deceased. THE PEOPLE OF THE STATE OF NEW YORK, Appellant; NORMA W. McGRATH, Respondent.

Fourth Department, April 8, 1959.

*Louis J. Lefkowitz, Attorney-General (Jean R. McCoy* and *Paxton Blair* of counsel), for appellant.

*Melvin & Melvin (Charles H. Thompson* of counsel), for respondent.

WILLIAMS, J. This case comes to us upon an appeal by the Attorney-General of the State of New York from an order of the Surrogate's Court of Onondaga County dated December 19, 1957 and an amendatory order dated January 16, 1958. The general effect of these two orders is to construe the will of the decedent so that one Norma Winifred McGrath, respondent and executrix therein, shall receive all of the United States Treasury Bonds which were found in the home of the decedent at the time of her death. The will of the testatrix which has been probated is dated July 6, 1955, and after making certain specific bequests, provides:

"I give and bequeath to Norma Winifred McGrath of 440 Allen Street, Syracuse, New York, my residence and land known as 713 Bear Street, Syracuse, New York, together with all fixtures, furnishings and all property and articles of whatsoever nature found therein, to belong to the recipient absolutely and forever, this bequest being made because either Norma Winifred

McGrath or Joyce McGrath have cared for me and stayed with me as a companion in my home upon my request.

"After payment of the above legacies above mentioned, I wish to establish the 'Margaret Falvey Memorial Fund', to be used for needy educational purposes and for elderly women who are in need of hospitalization but are without funds or families and at the discretion of Norma Winifred McGrath, my executor."

Said Norma Winifred McGrath was named sole executrix and all former wills were revoked.

On April 14, 1955 the testatrix had executed a prior will which also contained specific bequests and then provided:

"NINTH: I give, devise and bequeath unto WINIFRED MC GRATH, of 440 Allen Street, Syracuse, New York, or if she predeceases me, then to her daughter, JOYCE MC GRATH, my residence and land known as 713 Bear Street, Syracuse, New York, together with all fixtures, furniture, furnishings and improvements therein and thereon, to belong to the recipient absolutely and forever, this devise and bequest being conditioned, however, that either Winifred McGrath or Joyce McGrath shall have cared for me and stayed with me as a companion in my home from and after the execution of this, My Will, until my death or so long as requested by me so to do. If, in the judgment of my Executor hereinafter named, the condition of this devise and bequest shall not have been met, then I direct that the property mentioned in this paragraph numbered 'NINTH' become a part of the residue of my estate.

"TENTH: After payment of the specific legacies herein mentioned, I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, of whatsoever nature and wheresoever situate, of which I shall die seized or possessed, or to which I shall in any way be entitled at the time of my death, together with any accrued income thereon, to SYRACUSE UNIVERSITY, an educational institution at Syracuse, New York, absolutely, and forever, it being my desire that the Trustees of Syracuse University establish a fund to be known as the 'Margaret Falvey Fund', and that such fund be used to provide scholarship assistance to be paid from the income thereof for worthy female students who shall be residents of Onondaga County and communicants of a Presbyterian Church. In the discretion of said Board of Trustees, payments for scholarships may be discontinued from time to time and the income used to increase this scholarship further if such action seems necessary in order to provide adequate scholarship assistance."

A bank was named as sole executor.

It is under the quoted provisions of the probated will and particularly the language " together with all fixtures, furnishings and all property and articles of whatsoever nature found therein, to belong to the recipient absolutely and forever " that the Surrogate granted the orders in question. The determination was made without taking testimony and simply upon the petition of the executrix-beneficiary and affidavits presented by her. This was opposed by the Attorney-General, representing indefinite and uncertain beneficiaries of the charitable trust created by the will (Personal Property Law, § 12; Real Property Law, § 113). No written answer was filed, although the Attorney-General appeared and participated in the argument and, it may be assumed, objected to the granting of the order.

The Surrogate, in an opinion, cited cases following the well-established principle that the general scheme and intent of the testatrix must be found and ascertained, if possible, from the " four corners " of the will. Of course, we have no disagreement with the application of that rule in an appropriate case, but we do not consider the present case appropriate for such application. The Surrogate based his determination that the bonds should go to Norma Winifred McGrath on the fact that they were found in decedent's residence after her death. He relied on *Matter of Thompson* (217 N. Y. 111) as authority for his determination. The essential holding in the *Thompson* case was that a bequest was read in the light of conditions as they existed at the time of death. The court there was considering the contents of a safe-deposit box and decided only that in light of all the surrounding circumstances, it could be determined that the testatrix had not intended to bequeath those things which had been in the box at the time the will was executed but not in the box at the time of death. Where there was a residuary clause in the will, the court indicated that a general bequest of the contents would be limited to things *ejusdem generis* in light of the language used. The case thus is not authority for holding without more that everything inside a house at the time of death passes under a bequest of its contents or that such a determination could be made on the face of the will. Furthermore, in the *Thompson* case, the Surrogate took proof of the facts and circumstances surrounding the execution of the will and the activities of the testatrix and made relevant findings. The Court of Appeals stated at page 114: " The intention of the testatrix is to be determined from the language of the will as construed in the light of the facts and circumstances surrounding its execution ". As above stated, no testimony was taken

in the instant case as to the facts and circumstances, and no findings were made.

The petition presented by the executrix, who of course has a personal interest in the determination, contains some facts and many conclusions. It sets forth the clause in question and states that immediately after decedent's death there were found in her home certain treasury bonds, fire insurance policies and tax receipts pertaining to said home. It refers to the previous will of April 14, 1955 and states that on many occasions after making her last will, decedent had declared that her entire remaining property, after payment of general bequests, had been given to petitioner under said will and that such statements have been made to distinterested persons; that decedent had maintained a safe-deposit box and that the bonds in question were not in the box but were at her home at the time of death, although they had previously been kept in the box; and that decedent caused them to be removed to her residence for the expressed purpose and intention of having the same pass to Norma Winifred McGrath under the will. Affidavits of other persons were submitted to the effect that similar statements had been made by testatrix as to how she intended to dispose of her property.

The language in favor of Norma Winifred McGrath contained in the last will is broader than that of the prior will, and this, of course, is important. However, the language of the entire last will is at least of equal importance. It is obvious that it was not thought that the bequest to Norma Winifred McGrath, whatever it might encompass, would exhaust the entire estate; otherwise, the language establishing the " Margaret Falvey Memorial Fund " would be without purport or meaning. It is also a fair interpretation that it was contemplated that the residuary fund would be substantial for, if not, the language of the residuary clause would be practically meaningless. The fact that the previous will had set up a similar fund for Syracuse University indicates a continuity of thought on the part of the testatrix to establish a substantial educational fund which would bear the name " Margaret Falvey Fund " or " Margaret Falvey Memorial Fund ". Nevertheless, there is nothing before us to show the assets and liabilities of the estate; what proportion of the estate the bonds in question would constitute; whether the taking of the entire contents of the testatrix' residence, including the bonds, by Norma Winifred McGrath, would exhaust or deplete the estate so that there would be little or nothing for the memorial fund. There is nothing in the record to show that the Surrogate considered any of these matters,

nor to support the conclusion of the highly interested executrix-beneficiary McGrath to the effect that the bonds were removed from the safe-deposit box of the testatrix with the object of having them pass to her by this will. Further, the time of removal, the circumstances under which they were removed or by whom, were not before the Surrogate.

The respondent McGrath takes the position that under section 76 of the Surrogate's Court Act the petition became due proof of the facts therein stated as it was not controverted " by answer, objection or other proof." Apparently the Surrogate took the same view, although, as we have said, many of the statements in the petition were conclusory and not factual. However, we note particularly the language of section 76 that the petition and affidavit shall be due proof of the facts therein stated unless controverted by answer, objection or other proof. There was objection in this case, although an answer was not served or filed. Moreover, that section does not necessarily relieve the Surrogate of ascertaining the true facts and circumstances in a proceeding such as this even though no request was made by any party concerned that he take testimony. This he should have done of his own volition, particularly where there were indefinite and uncertain charitable residuary beneficiaries who obviously required protection as against this highly interested executrix-beneficiary asking for construction in her favor. Also, there were no known distributees listed in the petition for construction.

The respondent also contends that, because the Attorney-General failed to file a written answer or a memorandum of his legal position and offered no proof, he cannot controvert the facts stated in the petition. Although it is not clear, respondent seems to claim that the Attorney-General has no standing on this appeal. In this respect, we might comment that it appears without question that the Attorney-General has filed a petition for a compulsory accounting and a motion to reopen the orders here appealed from and that these matters are now pending before the Surrogate.

There is ample authority to the effect that this court may review the Surrogate's determination upon this appeal. In *Matter of Blumenstiel* (248 App. Div. 533) this court said at pages 544-545:

" We have the power to grant a new hearing * * * if we find ' sufficient cause ' * * * of any kind. We are not confined as to ' cause ' to ' fraud, newly discovered evidence, clerical error,' mentioned in section 20. * * *

"We desire to make it clear that we have thus construed this will in view of the construction adopted by the learned surrogate. Upon a new hearing other and different considerations may come to mind which will require a construction different from that indicated in this opinion."

In *Matter of Lanza* (149 Misc. 95) a proceeding was instituted by an undertaker for summary payment of his bill for the funeral of the deceased. No answer had been interposed to the petition and there had been a default in appearance by the fiduciary. Surrogate WINGATE stated at page 97: "In spite, however, of a default in appearance or answer by the fiduciary, a very real obligation is imposed upon the court to guard, so far as possible, the assets of the estate in the interest of those justly entitled thereto." The Surrogate then, of his own volition, found that the petition was defective and had to be denied.

In *Matter of Sheehan* (195 Misc. 964) the Surrogate said: "The objectors contend that the facts alleged in their objections pertaining to the construction of the will must be deemed admitted under section 76 of the Surrogate's Court Act as they have not been controverted. In a construction proceeding, however, the court is not bound to accept an undenied interpretation of the will. (*Matter of Israelite,* 155 Misc. 259.)"

In *Matter of Israelite (supra),* the court stated at page 260: "The construction proposed by the surviving executor and trustee is not opposed, but a particular interpretation of a will cannot be judicially determined upon mere consent. It is the intent of the testator, as expressed in his will or as implied therefrom after the application of pertinent canons of construction, that governs the adjudication. It is of course possible, and desirable under some circumstances, for all persons interested in an estate, including distributees as well as testamentary beneficiaries, if all are of full age and sound mind, to avoid the necessity of a judicial interpretation of the will by executing a valid and enforcible agreement *inter vivos,* provided that no statute or lawful testamentary provision is thereby violated (*Matter of Katz,* 155 Misc. 623). That course, however, may not be followed under the present circumstances." (See, also, *Matter of Hayden,* 199 Misc. 721, 1097.)

The Surrogate is given very broad general and incidental powers under sections 20 and 40 of the Surrogate's Court Act. Under section 309 of the act it appears to be the legislative intention to vest the same powers in the appellate courts.

"Where an appeal is taken upon the facts, the appellate court has the same power to decide the questions of fact, which

the surrogate had; and it may, in its discretion, receive further testimony or documentary evidence, and appoint a referee.

'' The appellate court may reverse, affirm, or modify, the decree or order appealed from, and each intermediate order, specified in the notice of appeal, which it is authorized by law to review, and as to any or all of the parties; and it may, if necessary or proper, grant a new trial or hearing.''

In view of these sections and the judicial construction above noted, there is no force to the argument that this court has no power of review in this case merely because the Attorney-General did not interpose written objections or call witnesses or because of section 76 of the Surrogate's Court Act.

The orders should be reversed and the matter remitted to the Surrogate to take testimony in relation to the various relevant facts and circumstances involved.

All concur. Present — McCurn, P. J., Kimball, Williams, Bastow and Halpern, JJ.

Orders reversed on the law and facts, without costs of this appeal to either party, and matter remitted to the Onondaga Surrogate's Court for further proceedings in accordance with the opinion.